## Commonwealth *v.* Manduchi, Appellant.

374

Argued December 10, 1963.   Before RHODES, P. J.,
ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*Donald J. Goldberg,* for appellant.

*Wilson Bucher,* First Assistant District Attorney,
with him *Alfred C. Alspach,* District Attorney, for
Commonwealth, appellee.

OPINION BY FLOOD, J., March 19, 1964:
On this appeal the defendant questions (1) the
admission in evidence against him of material obtained

by detectives, armed with a warrant to search his residence, who broke through the doors of his apartment without announcing their authority and purpose and (2) the correctness of the trial judge's statement of the issue in his charge to the jury.

1. The police officers who went to the defendant's apartment to execute the search warrant found the door locked. The first officer to reach the door knocked and heard a "scuffling" noise inside. Without waiting for any further response to the knock he broke open the door with a sledge hammer. There was another door to the apartment which other officers broke through by using a section of a telephone pole. Upon the ensuing search the officers seized certain material which was admitted into evidence over timely objection and motion to suppress.

We find no Pennsylvania appellate cases which discuss or determine the circumstances under which police officers armed with a warrant may break into a private dwelling place without first announcing their purpose and giving the occupants a chance to admit them. Each case depends upon its own circumstances. The circumstances surrounding the search and seizure in this case are not such as to make it unreasonable as a matter of law.

Detective Williams testified that he was first up the steps. He said, "I tried the door, it appeared to be locked; I knocked; I stepped back heard a little scuffle; and I had the sledge hammer up and I hit the door twice . . . On the second blow the door flew open." He did not wait for anyone to open the door. When the detectives entered the apartment they observed the defendant and two other persons. The defendant put a piece of paper in his mouth and swallowed it. A considerable amount of material was found which could be used in carrying on gambling operations.

There was ample ground for the issuance of the search warrant under which the search was made. There was also reason for the detectives to believe that the occupants of the apartment would try to destroy any number slips in their possession if they had warning of the raid. No authority is cited which requires an announcement of the officers' purpose before they entered pursuant to the authority of a warrant. Whether such an announcement should be made must be determined in the light of all the facts. The officer's conduct was not unreasonable. Under the circumstances we cannot say that the court erred in admitting the evidence obtained as a result of this search.

2. While the information upon which the defendant was held for the grand jury charged that "he [did] engage in bookmaking and occupy a place with books, apparatus and paraphernalia for the purpose of recording and registering bets and wagers", in indicting him the grand jury apparently dropped out part of this language. The indictment charged that he did "engage in bookmaking for the purpose of recording and registering bets and wagers". The information followed the language of the first and second clauses of §607 of the Act of June 24, 1939, P. L. 872, 18 PS §4607, but in the indictment most of the second clause dropped out. This left the last part of the charge in the indictment meaningless so that the only crime charged is engaging in bookmaking.

In his charge to the jury the trial judge quoted §607 in full and went on to say: "Now all of these acts as set forth in this indictment and in accordance with that portion of the Act of Assembly which I have just read to you are forbidden under the statutory law of the State and are therefore unlawful. However, there is only one question or issue for you to consider under this indictment in accordance with the evidence as presented by the Commonwealth, and that is, did the

defendant, Richard Joseph Manduchi, occupy apartment 149½ North Queen Street, in this city, with books, apparatus, or paraphernalia for the purpose of recording or registering bets or wagers. The question for you to determine is whether or not the defendant is guilty as indicted and is limited to that particular phase of the charge in the indictment, namely, occupying a place with books and paraphernalia as enumerated."

"Bookmaking" is defined in Black's Law Dictionary as "the recording or registering of bets or wagers on any trial or contest of speed or power of endurance or selling pools." This is taken from *People of New York v. Bennett,* 113 Fed. 515, 516 (1902). This is the way the term is used in Pennsylvania and is a satisfactory definition of the word "bookmaking" in §607 of the Act of 1939, supra.

It is quite clear that the evidence, if believed, justified the defendant's conviction of the crime of being engaged in bookmaking as charged in the indictment. Under the evidence in this case, a finding that the defendant was occupying the room with books, apparatus or paraphernalia for the purpose of registering and recording bets is sufficient to raise the inference that he was engaged in bookmaking. It is not surprising that the court's error as to the indictment was not noticed by the defendant's counsel at the time or excepted to or otherwise called to the trial judge's attention at the time so that it might be corrected. We see no such prejudicial error as would require a retrial of the case.

Judgment affirmed.