**UNITED STATES of America ex rel. Richard J. MANDUCHI**

v.

**Jack TRACY, Warden Lancaster County Prison.**

Misc. No. 2736.

United States District Court
E. D. Pennsylvania.

Sept. 4, 1964.

**424**

Donald J. Goldberg, Philadelphia, Pa., for relator.

Wilson Bucher, Dist. Atty., Lancaster County, Pa., for respondent.

LUONGO, District Judge.

Richard Joseph Manduchi, petitioner in this habeas corpus proceeding, was tried in the Court of Quarter Sessions of Lancaster County, and convicted of the misdemeanor of bookmaking. He was sentenced to pay a fine and to serve a one year term of imprisonment. After

the conviction was affirmed on appeal,[1] he was confined in the Lancaster County Prison to commence service of the sentence. Pursuant to an order entered by this court on May 25, 1964, he was released on bail pending disposition of this matter.

The very issue now before this court was fully raised and decided adverse to petitioner ·by the state courts in conjunction with the trial and subsequent appeal, consequently respondent concedes that state remedies have been effctively exhausted even though petitioner has not instituted state habeas corpus proceedings. Brown v. Allen, 344 U.S. 443, 447, 73 S.Ct. 437, 97 L.Ed. 469 (1953), rehearing denied, 345 U.S. 946, 73 S.Ct. 827, 97 L.Ed. 1370 (1953).

On June 12, 1964, a hearing was held before this court at which the evidence presented consisted solely of the record of all proceedings relating to Manduchi's trial. At the request of the court, a further hearing was held on August 3, 1964 at which testimony was taken, but in view of the disposition hereinafter made of this petition it will not be necessary to relate the testimony brought out during the further hearing. From the record of the state proceedings offered at the initial hearing before me, the following facts appear:

On March 1, 1961, Detective S. Kenneth Cliff of the Lancaster City Police obtained a search warrant for the apartment of Richard Manduchi as a result of information obtained by other police officers. Two other police officers, Detectives Rose and Goeke, thereupon went to a store where they observed a man dial Manduchi's telephone number. When the caller, now deceased, spoke the name "Red," Manduchi's nickname, and identified himself, Detective Rose, by walkie-talkie, radioed the police station and

---

1. See Commonwealth v. Manduchi, Indictment No. 79, June Term, 1961, Court of Quarter Sessions of Lancaster Co., Penna., January 26, 1962 and July 12, 1963; Commonwealth v. Manduchi, No. 325, October Term, 1963, Pa. Superior Ct., March 19, 1964. Relator's petition to the Pennsylvania Supreme Court for allowance of an appeal from the judgment of the Superior Court, affirming the conviction, was refused. Commonwealth v. Manduchi, 1964, 203 Pa.Super. 373, 198 A.2d 613.

Detective Cliff, along with Detective Williams and three other members of the department, proceeded to Manduchi's second floor apartment. When Detective Williams arrived, he tried the door, found it to be locked, knocked,[2] heard a "scuffling noise" inside the apartment (the noise was never more precisely described), and without giving anyone inside the apartment the opportunity to open the door, and without announcing his authority and purpose, proceeded to hit the door with a sledge hammer. On the second blow the door flew open and Detective Williams entered the apartment. Simultaneously, two other detectives broke open another door to the apartment with a section of wooden telephone pole.[3]

Detective Williams testified at the trial that upon entering the apartment he saw Manduchi put a piece of paper in his mouth and swallow it. Other papers found in the apartment were seized and admitted into evidence over defense counsel's objection. In addition, the detectives remained in the apartment for about an hour answering telephone calls made by persons asking for "Red." One such caller made numerous bets. Testimony concerning these calls was also given at the trial.

The issue raised by this petition is whether the evidence so obtained should have been excluded from the trial as the product of an unreasonable search and seizure prohibited by the Constitution of the United States. More narrowly stated, the issue is whether, under the circumstances, the entry by state officers armed with a search warrant without first announcing their authority and purpose violated constitutional safeguards against unreasonable search and seizure.

The Fourth Amendment's prohibition against unreasonable searches and seizures, with its accompanying sanction that evidence so obtained must be excluded from trial, is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), rehearing denied, 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961). Mapp did not furnish a definitive answer to the question whether a federal or state standard was to be applied in determining the reasonableness of a search [See Commonwealth v. Bosurgi, 411 Pa. 56, 65, 190 A.2d 304 (1963)], but the more recent case of Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) did. The standard to be applied is federal. It was stated in the following language in the opinion of Mr. Justice Clark for the Court in Ker:

" * * * the standard of reasonableness is the same under the Fourth and Fourteenth Amendments * * * the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria' laid down by the Fourteenth Amendment and in the opinions of this Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees." Id. at 33, 83 S.Ct. at 1630.

2. At the initial trial which was continued pending a hearing on a motion to suppress evidence, Williams testified that he knocked first and then tried the door. In view of the fact that he repeatedly testified that he did not wait for the door to be opened before breaking in, the inconsistency is not material.

3. The door which was forced open with the sledge hammer was the main entrance to Manduchi's apartment. Adjacent to it was another door which was a public entrance to a bathroom. Evidently, the bathroom was connected by yet another door to Manduchi's apartment. Although it is not entirely clear, the door forced open with the telephone pole seems to have been the public entrance to the bathroom. N.T. 8, 10, 35. The record is silent as to whether those officers using the telephone pole first knocked or tried the door, or whether they simply timed their entry with that of Detective Williams.

Mr. Justice Clark's opinion is joined in by three other justices and, in addition, four dissenting justices adopted that portion of Mr. Justice Clark's opinion.

█ One of the requirements of a reasonable search and seizure, under federal standards, is that the police officers must, prior to entry, make an announcement of their authority and their purpose for seeking entry unless there are circumstances excusing failure to do so. This requirement is an outgrowth of the traditional common law concept that a man's home is his castle. As early as 1603 an English court noted that " * * in all cases when the King is a party, the sheriff (if the door be not open) may break the party's house, either to arrest him, or to do other execution of the King's process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors. * * * " Semayne's Case, 77 Eng.Repr. 194, 195 (1603).

In Ker, county police officers having probable cause to believe that a felony had been or was being committed and having, therefore, probable cause to arrest him, obtained a pass key to Ker's apartment from the building manager, entered and searched it. That entry was regarded by the Court as the equivalent of a "breaking." In holding that the evidence seized in Ker's apartment as the result of the unannounced entry was admissible, the Court stressed circumstances which excused compliance with the requirement to announce authority and purpose.

> "Here justification for the officers' failure to give notice is uniquely present. In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police." Id. at 40, 83 S.Ct. at 1633.

The emphasis upon justifying circumstances in Mr. Justice Clark's opinion (joined in by three other justices) rather clearly indicates that entry without announcement will be deemed unreasonable, in violation of the constitutional safeguards, unless there are exigent circumstances excusing compliance. Mr. Justice Brennan, for the four dissenting justices, would have gone further and declared not only that exigent circumstances are required to excuse announcement of authority and purpose, but that no such circumstances existed in Ker and consequently the entry there violated constitutional standards.

In the course of its opinion, the Court did refer to a California statute [4] governing arrest procedure and to a similar federal statute [5] dealing with execution of search warrants but neither statute seems to have been of controlling significance in the Court's determination of the standards of reasonableness governing entry. The problem was regarded as one of constitutional dimension.

█ The search in Ker was incident to an arrest without a warrant for a felony, whereas in the instant case the search was pursuant to a validly issued search warrant. This is not a ground for distinction. The search warrant serves no greater function, in the one case, than does reasonable cause to believe that a felony has been committed, in the other; each makes lawful the presence of the officers *at the door*. If that door is not open, under the ruling of Ker, it may not be broken to apprehend a felon without prior announcement, except under exigent circumstances. If constitutional safeguards must be observed before the door may be broken for the purpose of apprehending a felon, *a fortiori* they must be observed before the door may be broken for the purpose of seeking *evidence* of a *misdemeanor*. The fact that a valid search warrant had issued is immaterial when that which is in issue is the *means of entry* as opposed to the *right of entry*. See Gate-

4. California Penal Code, § 844.

5. 18 U.S.C. § 3109.

wood v. United States, 93 U.S.App.D.C. 226, 209 F.2d 789 (1953); United States ex rel. Turco v. Dross, 224 F.Supp. 142 (S.D.N.Y.1963).

Here, in executing the search warrant, the police made no announcement of their authority or their purpose in seeking entry before they broke in. It is not clear whether the state courts held (a) that there is a constitutional right to such prior announcement, but that compliance was excused in this case by exigent circumstances, or (b) that there is no such constitutional requirement.[6] They concluded only that the search was reasonable under the circumstances.

In considering reasonableness, neither the trial court nor the appellate court drew any distinction between what the officers knew or had reason to believe before the breaking and that which they ascertained after. Both courts, in their respective opinions, recited conduct observed and material found after entry[7] and concluded, in the words of the appellate court, that "The circumstances surrounding the search and seizure in this case are not such as to make it unreasonable as a matter of law." Common-

wealth v. Manduchi, 203 Pa.Super. 373, 375, 198 A.2d 613, 614 (1964).

It can only be assumed from the foregoing that the state courts determined that the search of Manduchi's apartment, including the entry without announcement of authority and purpose, was reasonable by considering, as part of the surrounding circumstances, evidence obtained and information learned after the breaking. This is not consistent with federal constitutional standards.

The reasonableness of a search must be judged on the facts and circumstances existing at the time of the entry. A search may not be made reasonable by what it discloses. "It goes without saying that in determining the lawfulness of entry and the existence of probable cause we may concern ourselves only with what the officers had reason to believe *at the time of their entry.*" Ker, supra, 374 U.S. p. 40 n. 12, 83 S.Ct. p. 1633. See also, Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); and United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed. 210 (1948), wherein it was stated " * * * a search is not to be made

6. There are indications that the state courts held the latter view.

The trial judge in his memorandum opinion stated that:

" * * * Mapp v. Ohio * * * does not prevent a state court from applying its own, rather than the federal criteria of 'reasonableness' in determining whether a particular search and seizure was reasonable." 58 Lanc.L.Rev. 481, 482 (1963).

The Superior Court stated in its opinion, 203 Pa.Super. 373, 375–76, 198 A.2d 613, 614:

"We find no Pennsylvania appellate cases which discuss or determine the circumstances under which police officers *armed with a warrant* may break into a private dwelling place without first announcing their purpose and giving the occupants a chance to admit them. Each case depends upon its own circumstances."

\* \* \* \* \*

"There was ample ground for the issuance of the search warrant under which the search was made. There

was also reason for the detectives to believe that the occupants of the apartment would try to destroy any number slips in their possession if they had warning of the raid. *No authority is cited which requires an announcement of the officers' purpose before they entered pursuant to the authority of a warrant.* Whether such an announcement should be made must be determined in the light of all the facts. The officer's conduct was not unreasonable. Under the circumstances we cannot say that the court erred in admitting the evidence obtained as a result of this search." (Emphasis added.)

7. E.g., "When the detectives entered the apartment they observed the defendant and two other persons. The defendant put a piece of paper in his mouth and swallowed it. A considerable amount of material was found which could be used in carrying on gambling operations." Commonwealth v. Manduchi, 203 Pa.Super. 373, 375, 198 A.2d 613, 614 (1964).

**428**

legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." See also United States v. Merritt, 293 F.2d 742 (3rd Cir. 1961).

Since the state court's finding of reasonableness was predicated on an improper standard, the finding must fall and so must the conviction which was based upon evidence admitted on the strength of that finding. Cf. Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961).

The petition for writ of habeas corpus will be granted, but opportunity will be afforded the Commonwealth either to appeal from this grant of the writ or to retry the petitioner, if it so desires. Execution of the writ will, therefore, be stayed for a period of thirty (30) days. At the end of that period of time, if the Commonwealth has neither appealed from this ruling nor initiated proceedings looking to a retrial, the writ will be executed and the petitioner released. Bail to continue in the meantime.