Commonwealth *v.* Newman, Appellant.

Argued January 10, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

442

*Arthur Levy,* with him *McClenachan, Blumberg & Levy,* for appellant.

*Vram Nedurian, Jr.,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 16, 1968:

This is an appeal by Henderson Newman from the order of the Superior Court, affirming the judgment of sentence of the Court of Quarter Sessions of Delaware County.

Appellant was indicted on December 7, 1964, for the crimes of (1) traffic in lottery tickets; (2) setting up a gambling establishment; (3) procuring persons to gamble; (4) enticing persons to gamble, and (5) aid-

ing and assisting others to gamble. Appellant filed a petition to suppress evidence obtained by the detectives after their entry into his home. The petition was denied and the case went to trial. A demurrer was sustained as to all but the lottery count. On that count, the jury returned a verdict of guilty. After appellant's motions for a new trial and arrest of judgment were denied and sentence imposed, he appealed to the Superior Court. That court affirmed, with two judges dissenting. We granted allocatur.

The Commonwealth's evidence disclosed that on November 16, 1964, at about 11:30 a.m. four detectives went to appellant's home with a body warrant for appellant and a search warrant for the premises. The complaint for the search warrant recited that the affiant, Detective John MacCrory, deposed that there was probable cause to believe that certain books, papers, and other items used for the purpose of a lottery were in the possession of Henderson Newman at or near 721 West Mary Street. The complaint further recited that the affiant had received complaints and information from persons of reliable and good reputation which the affiant had reason to believe to be true and which were relied upon in making the affidavit. It was further recited that the affiant had been told that the subject premises was a numbers drop, that a surveillance had revealed a considerable amount of traffic going in and out of the house, and that it was believed that gambling activities were conducted in the house.

Appellant urges that the complaint fails to comply with the requirements of *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509 (1964). That case held that although an affidavit for a search warrant may be based on hearsay information and need not reflect the direct personal observation of the affiant, the magistrate must nevertheless be informed of some of the underlying

circumstances on which the informant based his conclusions and some of the underlying circumstances from which the affiant concluded that the informant, whose identity need not be disclosed, was credible or his information reliable. The question thus is whether the recital of police surveillance of traffic going in and out of the house supplies the requisite underlying circumstances to remove the vice of being conclusory from the instant complaint. We need not decide this delicate question here, however, for we are convinced that the execution of the search warrant violated the Fourth Amendment.

When the detectives arrived at appellant's premises, they banged on the door and announced in a loud voice that they were the police. When there was no response within about twenty seconds, the detectives broke in the door with a sledge hammer.

There can no longer be any doubt that such a procedure violates the Fourth Amendment. An announcement of both authority and purpose is required before a door can be broken down, absent exigent circumstances. It is clear that established federal constitutional standards are the minimum which must be satisfied in determining if the force used in the execution of a search warrant was proper. *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684 (1961); *Ker v. California,* 374 U.S. 23, 83 S. Ct. 1623 (1963). These standards require that the method of entry be "reasonable". *Ker v. California,* supra. Several recent cases arising in Pennsylvania have given content to "reasonable", so that the constitutional standards appear to be those embodied in 18 U.S.C. §3109: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and

purpose, he is refused admittance, . . ."[1]  In *Commonwealth v. Manduchi*, 203 Pa. Superior Ct. 373, 375, 198 A. 2d 613 (1964), the detective tried the door, found it to be locked, knocked, heard a "scuffling noise", and without giving anyone inside the apartment the opportunity to open the door, and without announcing his authority and purpose, proceeded to break open the door with a sledge hammer.  The Superior Court stated: "We find no Pennsylvania appellate cases which discuss or determine the circumstances under which police officers armed with a warrant may break into a private dwelling place without first announcing their purpose and giving the occupants a chance to admit them." The Superior Court admitted the disputed evidence in that case, but the United States District Court for the Eastern District of Pennsylvania in a habeas corpus proceeding ordered the defendant released, *United States ex rel. Manduchi v. Tracy*, 233 F. Supp. 423 (1964), because the forced entry with no announcement made the entry and thus the search unreasonable.  The United States Court of Appeals for the Third Circuit affirmed the decision of the District Court in 350 F. 2d 658 (1965).

The result of the reversal of the Superior Court by the federal courts was to indicate that some "announcement" doctrine must apply in Pennsylvania, even though no case had as yet set forth the standard. That standard has now been delineated in the recent case of *United States ex rel. Ametrane v. Gable*, 276 F. Supp. 555 (E.D. Pa. 1967). The facts in that case were as follows: Two county detectives obtained warrants authorizing the arrest of Ametrane and a search

---

[1] Although a majority of states have specific announcement statutes similar to 18 U.S.C. §3109, Pennsylvania does not. For a listing of statutes, see *Ker*, supra (Justice BRENNAN's opinion at 50 n.4).

446

of his premises. At 2:40 p.m. that same day the detectives arrived at the alley passage leading to the ground floor living quarters. The detectives were not in uniform; they wore ordinary street clothes. As they proceeded down the alley, they saw Ametrane in the second floor bay window, sitting at a table where the detectives had on prior occasions observed him making and receiving telephone calls. One detective testified that Ametrane "looked down as we were coming . . ." The detectives then hurried up to Ametrane's door and rapped loudly. They heard nothing, and no one answered their knock on the door. They knocked again and immediately began to pry open the door with a two-foot crowbar. As they started to pry the door open, Ametrane said not to break the door, that he would let them in.

The trial court held that Ametrane, by opening the door, had consented to the officers' entry. The Superior Court, however, concluded that the trial court had found that the detectives had made an announcement by ringing a bell or by knocking. We affirmed, by a 3-2 vote. Two justices for affirmance were of the opinion that Ametrane could not object to the detectives' failure to state their identity or purpose because "he was well aware of who were at his door and why they were there." *Commonwealth v. Ametrane*, 422 Pa. 83, 88, 221 A. 2d 296 (1966). The third justice concurred in the result, indicating that he based his opinion on the consent to the entry. The district court held that none of the conclusions of the state courts was supported by the evidence. Yet the district court pointed out that all three state court conclusions were based "on one implicit common premise: that the officers did not explicitly announce their identity or purpose before they entered." 276 F. Supp. at 557. Since the excuses or implied announcements found by the

state courts were not supported by the evidence, this failure to announce invalidated the search. The district court found that "although the officers possibly may have identified themselves before entering, they did not state their purpose or show their warrants." 276 F. Supp. at 557. They were required to state their purpose: "The fourth amendment prohibition against unreasonable search and seizure clearly demands that, ordinarily, before a police officer enters upon private premises to conduct a search or to make an arrest, he must give notice of his identity *and purpose*; the only exception is when exigent circumstances justify the failure to give notice." (Emphasis added) 276 F. Supp. at 557. Nor is it too much to expect of the officers to announce their purpose in demanding admission. As the United States Supreme Court pointed out in *Miller v. United States,* 357 U.S. 301, 309, 78 S. Ct. 1190 (1958): "The burden of making an express announcement is certainly slight. A few more words by the officers would have satisfied the requirement in this case."

It is undisputed that there was no announcement of purpose in the instant case. Nor were there any exigent circumstances which would justify entry without proper announcement. Both of the leading United States Supreme Court cases, *Miller* and *Ker,* recognized that the justification for noncompliance might be that the person to be arrested is fleeing or attempting to destroy evidence. *Miller* also indicated that noncompliance might be excused where the police have valid grounds for being virtually certain that petitioner already knows their purpose. *Ker* expanded on this by holding that Ker's furtive conduct in eluding the police shortly before the arrest was ground for the belief that he might well have been expecting the police. Neither of these exceptions to the requirement of an-

nouncement applies here. There is nothing in the record to indicate that appellant was fleeing or about to destroy evidence. Surely a mere twenty second delay in answering the door cannot constitute support for a belief that evidence was being destroyed (or in terms of 18 U.S.C. §3109, a refusal of admittance). In *Ametrane,* supra, the delay was a full minute, yet the district court did not find any exigent circumstances justifying a forceful entry made without proper notice. The court pointed out that Ametrane was on the second floor and "might have had countless legitimate reasons for taking a minute to answer the door." 276 F. Supp. at 559. Although it is doubtful that a different result would obtain even if Newman had been on the first floor, Newman, too, was on the second floor. This was known to the police, who had observed him through a window. The fact that some lottery paraphernalia is easily destroyed does not justify the suspension of the Fourth Amendment in all lottery prosecutions. One of the prices we have to pay for the security which the Fourth Amendment bestows upon us is the risk that an occasional guilty party will escape. See *Elkins v. United States,* 364 U.S. 206, 80 S. Ct. 1437 (1960). Something more than the officers' shout of "police", combined with their belief that a lottery is being carried on, is necessary to suspend the vital safeguard of our liberty that the Fourth Amendment has proved to be. *Ker* is no authority to the contrary. The forced entry without proper announcement in that case was justified not merely by the possibility of easy destruction of narcotics, but also by the officer's proper belief, based on Ker's furtive conduct in eluding them shortly before the arrest, that he might well have been expecting the police. Nor can we justify the instant entry on the grounds that the police could properly believe that appellant was expecting

them or knew their purpose. To do so would be to uphold every search that uncovers relevant evidence. The argument would be that since defendant was violating the law, he must have known the purpose of the police. The United States Supreme Court categorically rejected such an argument in *Ker,* supra at n.12. "It goes without saying that in determining the lawfulness of entry and the existence of probable cause we may concern ourselves only with what the officers had reason to believe *at the time of their entry.* Johnson v. United States, 333 U.S. 10, 17 [68 S. Ct. 367] (1948). As the court said in United States v. Di Re, 332 U.S. 581, 595 [68 S. Ct. 222] (1948), 'a search is not to be made legal by what it turns up. In law it is good *or bad* when it starts and does not change character from' what is dug up subsequently." (Emphasis in *Ker*).

Thus we hold that the forcible entry without announcement of purpose violates the Fourth Amendment. The fruits of an illegal search are inadmissible under *Mapp v. Ohio,* supra. Therefore, the order of the Superior Court is reversed, the judgment of the Court of Quarter Sessions is vacated, and a new trial is granted.

---

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I agree with the result reached by the majority, but feel compelled to express some personal observations.

The majority opinion judges the constitutionality of a forced entry with reference to a standard more strict than that used in any prior decision it cites. Insofar as the majority decision suggests that its result is compelled by *Ker v. California,* 374 U.S. 23, 83 S. Ct. 1623 (1963), or *United States ex rel. Manduchi v. Tracy,* 350 F. 2d 658 (3d Cir.), cert. denied 382 U.S. 943, 86 S. Ct. 390 (1965), or *United States ex rel.*

*Ametrane v. Gable,* 276 F. Supp. 555 (E.D. Pa. 1967), I respectfully disagree.

In *Ker v. California,* the leading United States Supreme Court decision on point, a majority of the Court held that an entry made without the occupant's consent and without an announcement of either authority or purpose did not violate the federal constitution. The majority decision notes that the officers had reason to believe from the suspect's furtive conduct that he "might well have been expecting the police"; it also notes that the officers knew that the narcotics for which they were searching could be quickly and easily destroyed. These two factors together were held to be unique justification for the unannounced entry.

In this case, the same analysis used by the majority in *Ker* indicates that the entry was not in violation of the federal constitution. As in *Ker,* the entering detectives had reason to believe they were expected. One reason they were expected is well stated by the Superior Court: "We must also take into consideration the fact that a man was observed at the front window on the second floor and that he, in all likelihood, had seen and was aware of the fact that the car had stopped in front of the premises and that three detectives, after alighting from the cars, passed therefrom across the sidewalk to his front door. It is also a fact, probably well known to the detectives in this case, that they were well known to the local gamblers. . . ."[1] The second reason they were expected is that the entry in this case, unlike that in *Ker,* was preceded by an announcement of "police." Thus the occupants were certainly informed of what the suspect in *Ker* "might well have been expecting." Like the detectives in *Ker,* the entering officers in this case also must have known that the evidence for which they were searching could

---

[1] 210 Pa. Superior Ct. 39-40, 232 A. 2d 3.

be quickly and easily destroyed. The reason for finding this knowledge is well stated by the Superior Court: "Three detectives of the vice squad of the district attorney's office testified. The record reveals that they had been members of the vice squad for a considerable period of time. . . . It is a well established fact that defendants in gambling and narcotics cases . . . have destroyed the evidence before the raiding officers could take it. . . . The record shows that the detectives in this case were qualified experts in this field and they were undoubtedly aware of such practices."[2] Thus a comparison of the entry in *Ker* with this entry indicates that the same unique justification making the entry in *Ker* constitutional would also make this entry constitutional.

Similarly, a comparison of the entries held to be unreasonable in *United States ex rel. Manduchi v. Tracy* and *United States ex rel. Ametrane v. Gable,* supra, with the entry in this case does not indicate that this entry was unconstitutional. In *Manduchi,* Lancaster city detectives broke down a door before announcing either authority or purpose. Consequently, there was no reason for the suspect to expect police before the forcible entry. Similarly in *Ametrane,* the officers entered without announcing either their identity or purpose. The federal district court found no evidence to support a finding that the occupants knew the police were at the door or expected them. In contrast, before the entry in this case there was an announcement of "police" as well as the possibility that the occupants saw and recognized the detectives as they approached the premises. Thus an element crucial to the finding of unique justification in *Ker* (i.e., the possibility that the police were expected) was absent in

---

[2] 210 Pa. Superior Ct. 37-39, 232 A. 2d 2-3.

452

both *Manduchi* and in *Ametrane,* but was not absent in this entry.

In my view, today's decision must rest on an adoption of the constitutional standard advocated and sufficiently justified by the dissent in *Ker v. California.* In that dissent, Mr. Justice BRENNAN, joined by Chief Justice WARREN, Mr. Justice DOUGLAS and Mr. Justice GOLDBERG proposed: "The protections of individual freedom carried into the Fourth Amendment . . . undoubtedly included this firmly established requirement of an announcement by police officers of purpose and authority before breaking into an individual's home." "The Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted."

In the instant case there admittedly was no announcement of purpose by the raiding police officers. In my view, an announcement of purpose, as well as an announcement of authority, is not too much to expect of the police before breaking into an individual's home and should be required in Pennsylvania. I see no reason to invoke any of the exceptions enumerated in Mr. Justice BRENNAN's dissent in *Ker.* I, therefore, agree with the majority that the entry in this case should be declared illegal.

Mr. Justice JONES joins in this concurring opinion.