600 A.2d 1265

**COMMONWEALTH of Pennsylvania**

v.

**Liam AGNEW and Kevin O'Hara, Appellants.**

Superior Court of Pennsylvania.

Argued June 18, 1991.

Filed Dec. 17, 1991.

eligible to receive the pension, then we presume that appellee will be entitled to receive this asset.

64

Jon Auritt, Media, for appellants.

Louis G. Stesis, Asst. Dist. Atty., Media, for Com., appellee.

Before ROWLEY, President Judge, and CAVANAUGH and WIEAND, JJ.

WIEAND, Judge:

Liam Agnew and Kevin O'Hara were tried non-jury and were found guilty of possession of a small amount of cocaine and criminal conspiracy.[1] Both were sentenced to pay fines of two hundred ($200.00) dollars and serve concurrent six (6) month terms of probation. On direct appeal from the judgments of sentence,[2] they argue that the trial court erred by refusing to suppress the cocaine seized by police, as well as an inculpatory statement by O'Hara, all of

---

1. Agnew and O'Hara were tried with a third defendant, William Leach, who is not a party to this appeal. The record before this Court does not disclose the disposition of the charges against Leach. However, appellants state in their brief that Leach was acquitted of the charges against him.

2. There were no post-trial motions filed in this case. Rather, upon the rendering of the verdict, appellants, the Commonwealth and the trial court all agreed that, in the interests of judicial economy, sentence would be immediately imposed and appellants would file a direct appeal, without first filing post-trial motions. We do not condone such a blatant disregard for established procedural practice. Nevertheless, because the issues now raised by appellants were properly raised pre-trial and were decided on their merits by the trial court, we will address the merits of this appeal. To penalize appellants for not following proper post-trial procedure would be unfair, where, as here, both the Commonwealth and trial court were equal participants in ignoring the rules of procedure.

which were the result of a stop of their vehicle and an arrest unsupported by probable cause. Appellants argue further that the District Attorney of Delaware County abused his discretion by refusing to consider them for pre-trial placement in the Accelerated Rehabilitation Disposition program (ARD) because of an arbitrary policy which violated constitutional principles of due process and equal protection.

We consider first the challenge made by appellants to the District Attorney's refusal to recommend their placement in an ARD program. This decision was made on the basis of an unwritten policy of the District Attorney which designated the City of Chester as a drug selling zone and which, therefore, rendered persons ineligible for ARD if they were charged with participating in a drug transaction in Chester. The District Attorney concedes that this is his policy and that persons arrested for possessing small amounts of controlled substances in other parts of Delaware County are routinely considered for ARD. Appellants contend that this unwritten policy is arbitrary and unfair. It is also contended that the policy is violative of constitutional principles of due process and equal protection because it makes an impermissible distinction between two classes of individuals who, in all other respects, would be equally acceptable for the ARD program. The Commonwealth responds with the assertion that its policy is neither arbitrary nor discriminatory, but is aimed at protecting society by combating the drug problem in Delaware County at its most persistent and pervasive location. In support of the implementation of the policy to exclude from ARD consideration those who commit possessory drug offenses in the City of Chester, the District Attorney offers the following specific reasons:

1. The City of Chester has presented and continues to present the most significant problems and challenges for drug enforcement personnel in Delaware County;

2. The City of Chester is the focal point for open drug sales in public places in the County of Delaware;

3. Due to the fast-paced nature of public drug sales in the City of Chester, individuals from both inside and outside of Chester are able to drive to areas of high drug sales in Chester, quickly purchase drugs from within or near their vehicles, and promptly depart from the drug sale area; and

4. In the recent past, substantial violence has resulted from drug activities in the City of Chester; drug-related homicides, robberies and assaults have occurred at disproportionate levels in Chester during the past two years.

■ "A defendant's admission into an ARD program is not a matter of right but rather a privilege." *Commonwealth v. Hyde,* 406 Pa.Super. 445, 447, 594 A.2d 703, 704 (1991). The decision to submit a case for ARD placement is in the sole discretion of the district attorney. *Commonwealth v. Paul,* 383 Pa.Super. 486, 490, 557 A.2d 357, 358 (1989). The district attorney's discretion is broad, and the scope of appellate review of the exercise of that discretion is narrow. The limits of the district attorney's discretion in matters concerning admission to ARD have been established by the Pennsylvania Supreme Court as follows:

[T]he decision to submit the case for ARD rests in the sound discretion of the district attorney, and absent an abuse of that discretion involving some criteria for admission to ARD wholly, patently and without doubt unrelated to the protection of society and/or the likelihood of a person's success in rehabilitation, such as race, religion or other such obviously prohibited considerations, the attorney for the Commonwealth must be free to submit a case or not submit it for ARD consideration based on his view of what is most beneficial for society and the offender.

*Commonwealth v. Lutz,* 508 Pa. 297, 310, 495 A.2d 928, 935 (1985) (citations omitted). See also: *Commonwealth v. Stranges,* 397 Pa.Super. 59, 579 A.2d 930 (1990) (en banc); *Commonwealth v. Paul, supra; Commonwealth v. Knowles,* 373 Pa.Super. 203, 540 A.2d 938 (1988); *Commonwealth v. Mowry,* 358 Pa.Super. 233, 516 A.2d 1270 (1986);

*Commonwealth v. Kiehl,* 353 Pa.Super. 353, 509 A.2d 1313 (1986); *Commonwealth v. Brown,* 350 Pa.Super. 453, 504 A.2d 927 (1986). With respect to the *Lutz* decision, the Superior Court has observed:

> *Lutz* restricts the district attorney's discretion in two significant respects. First, the prosecutor must openly specify reasons for not submitting a case for ARD. *Commonwealth v. Manning,* 367 Pa.Super. 624, 626–627, 533 A.2d 448, 450 (Pa.Super.1987); *Commonwealth v. Kiehl,* 353 Pa.Super. 353, 509 A.2d 1313 (1986). Second, these reasons must relate to the protection of society or to the likelihood of the candidate's successful rehabilitation.

*Commonwealth v. Ebert,* 369 Pa.Super. 318, 322, 535 A.2d 178, 180 (1987).

"Due process encompasses elements of equality and provides the court with a vehicle for enforcing the constitutional principle that all criminal defendants are treated with 'fundamental fairness'...." *Commonwealth v. Melnyk,* 378 Pa.Super. 42, 51, 548 A.2d 266, 270–271 (1988), citing *Gagnon v. Scarpelli,* 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656, 666 (1973). "The touchstone of due process is protection of the individual against arbitrary action of the government." *Commonwealth v. Robinson,* 497 Pa. 49, 54, 438 A.2d 964, 966 (1981), *appeal dismissed,* 457 U.S. 1101, 102 S.Ct. 2898, 73 L.Ed.2d 1310 (1982), citing *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 952 (1974).

> " 'Due process' emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. 'Equal protection,' on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable."

*Commonwealth v. Melnyk, supra,* 378 Pa.Super. at 49, 548 A.2d at 269, quoting *Ross v. Moffitt,* 417 U.S. 600, 608–609, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341, 350 (1974). " 'The

concept of equal protection ... demands that uniform treatment be given to similarly situated parties.... If classifications are drawn, then the challenged policy must be reasonably justified.'" *Smith v. City of Philadelphia*, 512 Pa. 129, 137–138, 516 A.2d 306, 310 (1986), *appeal dismissed*, 479 U.S. 1074, 107 S.Ct. 1265, 94 L.Ed.2d 127 (1987), quoting *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 68, 436 A.2d 147, 155 (1981), *appeal dismissed*, 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982).

■■■■ "Absent a fundamental right, the standard of review for a substantive due process challenge is whether the [policy] at issue has a reasonable basis...." *Dranzo v. Winterhalter*, 395 Pa.Super. 578, 589–590, 577 A.2d 1349, 1355 (1990). To prevail under the rational basis test, the party asserting a due process violation must demonstrate that there is no relationship between the challenged policy and a legitimate state interest. *Id.* at 590, 577 A.2d at 1355. See also: *Henne v. Wright*, 904 F.2d 1208, 1215 (8th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 692, 112 L.Ed.2d 682 (1991); *Morris v. Public School Employees' Retirement System*, 114 Pa.Cmwlth. 369, 378, 538 A.2d 1385, 1389 (1988). Similarly, under the equal protection clause, a classification "which does not implicate 'fundamental interests' or affect with particularity a 'suspect class' " will be upheld so long as it "bears a rational relationship to a legitimate state interest." *Commonwealth v. Hicks*, 502 Pa. 344, 347, 466 A.2d 613, 615 (1983), *appeal dismissed*, 465 U.S. 1015, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984). It has been observed that, absent the deliberate use by the district attorney of such factors as race, religion or other suspect classifications, the exercise of prosecutorial discretion in decisions concerning admission into ARD does not violate constitutional principles of due process and equal protection. *Shade v. Commonwealth, Department of Transportation*, 394 F.Supp. 1237, 1242 (M.D.Pa.1975), citing *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). See also: *Commonwealth v. Ebert, supra*, 369 Pa.Super. at 324, 535 A.2d at 181 (equal protection does not restrain prosecutorial

discretion in ARD matters unless exercise of discretion was based upon unjustifiable standard such as race or religion or an arbitrary classification).

■ The distinction between persons committing possessory drug offenses in the City of Chester and those committing the same offense at other places in Delaware County does not involve a suspect classification. The fact that criminal offenses are punished differently in different areas is not necessarily unconstitutional. " 'The Equal Protection Clause relates to equality between persons as such rather than between areas.... Territorial uniformity is not a constitutional requisite.' " *Commonwealth v. Kindness,* 247 Pa.Super. 99, 109, 371 A.2d 1346, 1351 (1977), quoting *Salsburg v. Maryland,* 346 U.S. 545, 551–552, 74 S.Ct. 280, 283–284, 98 L.Ed. 281, 288 (1954).

After careful consideration, we agree with appellants that the location of the commission of a possessory drug offense bears no relationship to whether or not a defendant can be successfully rehabilitated. However, we cannot conclude that the district attorney's policy is wholly unrelated to the protection of society. The district attorney has identified the City of Chester as the hub of illegal drug trafficking in Delaware County. We cannot say that a policy aimed at discouraging persons from purchasing drugs in the City of Chester, by denying them consideration for placement into an ARD program, bears no rational relationship to the protection of the public. We conclude, therefore, that there is no basis in this case for disturbing the district attorney's exercise of discretion. "Once it is determined that the general policy bears some rational relationship to the protection of the public, it is improper to consider the manner in which or the degree to which that acceptable policy affects a specific [defendant]." *Commonwealth v. Stranges, supra,* 397 Pa.Super. at 65, 579 A.2d at 933. See also: *Commonwealth v. Mowry, supra,* 358 Pa.Super. at 237, 516 A.2d at 1272. We conclude, therefore, that appellants have asserted no basis for relief with respect to the District

Attorney's refusal to recommend them for participation in the ARD program.

In reviewing the ruling of a suppression court,

'we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.'

*Commonwealth v. Whitney*, 511 Pa. 232, 239–240, 512 A.2d 1152, 1156 (1986), quoting *Commonwealth v. Cortez*, 5C7 Pa. 529, 532, 491 A.2d 111, 112 (1985), *cert. denied*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). See also: *Commonwealth v. O'Shea*, 523 Pa. 384, 395, 567 A.2d 1023, 1028 (1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990); *Commonwealth v. Hughes*, 521 Pa. 423, 438–439, 555 A.2d 1264, 1271–1272 (1989).

The suppression court made the following detailed findings of fact:

1. Officer Dennis McIntyre, a member of the Narcotics Unit of the City of Chester Police Department, Delaware County, Pennsylvania, received special training in narcotics investigation and has participated in hundreds of arrests related to controlled substances.

2. On April 26, 1990, between 8:00 and 9:00 p.m., Officer McIntyre was on plain clothes duty in an unmarked police vehicle near the "Live Wire Bar" located at Sixth Street and Potter Street in Chester. That vicinity is recognized as a high drug activity area. He, along with two other members of the narcotics unit, were conducting surveillance for drug trafficking from the unmarked automobile. The area is frequented predominately [sic] by blacks and Puerto Ricans. Immediately behind the "Live Wire Bar" is a lot which provides a haven for trafficking activity and where Officer McIntyre has wit-

nessed numerous illegal drug transactions. The area is not well-lit and individuals engaged in illegal activity can, if they detect police presence, run through the "Live Wire" and disappear into apartments located above the bar. No other businesses or homes are located in the area behind the bar. Therefore, there is little reason for individuals to pull their vehicles into the lot other than to engage in illegal transactions.

3. At approximately 8:50 p.m., Officer McIntyre observed a blue Toyota automobile with three white males pull into the lot behind the Live Wire Bar. Officer McIntyre then observed two black males in the area where the blue Toyota stopped. Officer McIntyre exited his police vehicle and went to an area across the street from the rear of the bar, approximately 30 to 40 yards away from the Toyota vehicle and the two black men whom he had previously observed. It was dark outside at that time and no lights were on inside the Toyota automobile.

4. Officer McIntyre watched one of the black males who wore light colored clothing approach the passenger side of the Toyota. A conversation took place and the black male clad in light clothing returned to the other black male who then went to the front passenger side of the Toyota automobile. Officer McIntyre observed, the second black male place his hand inside the passenger window and, although Officer McIntyre was unable to see any objects passed between the parties, he believed that he had witnessed a drug transaction. The entry of the black male's arm into the passenger window suggested that a transaction had transpired.

5. The Toyota then exited the lot and proceeded to the area of Tenth and Chestnut Streets in the City of Chester where it pulled into a lot adjacent to the DelMont Mechanical Company warehouse. Officer McIntyre re-entered his police vehicle and together with the other two officers, the law enforcement agents followed the subject Toyota until it stopped. Other police vehicles also re-

sponded to a radio call from Officer McIntyre and arrived at Tenth and Chestnut Streets shortly after Officer McIntyre and his fellow officers. There was no chase involved. Apparently, the defendants were all employed at DelMont Chemical Company and were returning to work.

6. Officer McIntyre pulled behind the subject Toyota, exited his car, identified himself to the occupants of the Toyota as a police officer and instructed the occupants to exit the subject vehicle.

7. As Officer McIntyre walked towards the driver's door of the subject vehicle, defendant Kevin Joseph O'Hara exited as directed by Officer McIntyre, and responded to the officer's instruction that he place his hands on the car's roof. Officer McIntyre then patted down O'Hara and also placed his hands in both of O'Hara's pants pockets. O'Hara was then handcuffed and directed to stand at the rear of the subject vehicle.

8. Officer Floyd Lewis of the Chester City Police Department Narcotics Unit was one of the officers in the company of Officer McIntyre. Officer Lewis immediately went to the front passenger side of the Toyota as defendant Liam Agnew exited the front passenger side. Agnew was placed in handcuffs by another police officer and his pockets were searched. Officer Lewis looked inside the front passenger door which had been left open, but observed nothing. He then shined his flashlight onto the floor of the front passenger side of the vehicle and bent over so that his body was protruding into the vehicle. After removing some trash which was on the floor of the vehicle, Officer Lewis spied a plastic bag containing a white substance protruding from under the front passenger seat. Officer Lewis believed that the bag contained cocaine and he immediately retrieved the bag and then went to the rear passenger seat from which defendant William Michael Leach had exited. Officer Lewis then found another plastic bag containing a white powdery substance on the floor of the vehicle under the front passenger seat which he also believed to contain a con-

trolled substance. Officer Lewis then advised Officer McIntyre of his discovery, whereupon defendant O'Hara stated, "Both of them are mine." All of the defendants were then placed under arrest.

9. Defendant Liam Agnew had thrown the two plastic bags containing the controlled substances under the front passenger seat.

Based upon these findings, the suppression court concluded that the search of the vehicle in which appellants had been riding was justified because the search had been incident to a lawful arrest.

■■■ As a general rule, a search conducted without a warrant is presumed to be unreasonable unless it can be justified under a recognized exception to the search warrant requirement. See: *Commonwealth v. Holzer*, 480 Pa. 93, 102, 389 A.2d 101, 106 (1978); *Commonwealth v. McBride*, 391 Pa.Super. 113, 119, 570 A.2d 539, 542 (1990). One such exception is a search which is incident to a lawful arrest. *Commonwealth v. Lewis*, 394 Pa.Super. 403, 407, 576 A.2d 63, 65 (1990); *Commonwealth v. York*, 381 Pa.Super. 55, 61, 552 A.2d 1092, 1094 (1989). " 'When a policeman has made a lawful arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.' " *Commonwealth v. Jones*, 396 Pa.Super. 304, 307, 578 A.2d 527, 529 (1990), quoting *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981) (footnotes omitted).

"To be constitutionally valid, a warrantless arrest must be supported by probable cause." *Commonwealth v. Anderson*, 360 Pa.Super. 466, 470, 520 A.2d 1184, 1186 (1987). See also: *Commonwealth v. Canning*, 402 Pa.Super. 438, 441–442, 587 A.2d 330, 332 (1991); *Commonwealth v. Merriwether*, 382 Pa.Super. 411, 419, 555 A.2d 906, 910 (1989).

In this Commonwealth, the standard for evaluating whether probable cause exists is the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S.

213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See Commonwealth v. Baker,* 513 Pa. 23, 518 A.2d 802 (1986), *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985). The bench mark of a warrantless arrest is the existence of probable cause, namely, whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. *Commonwealth v. Wagner,* 486 Pa. 548, 406 A.2d 1026 (1979).

*Commonwealth v. Rodriguez,* 526 Pa. 268, 272–273, 585 A.2d 988, 990 (1991). See also: *Commonwealth v. Fromal,* 392 Pa.Super. 100, 112–113, 572 A.2d 711, 717 (1990); *Commonwealth v. Butler,* 354 Pa.Super. 533, 537–538, 512 A.2d 667, 669–670 (1986).

'When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element ... We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might ... Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond-a-reasonable-doubt' standard which we apply in determining guilt or innocence at trial. *Commonwealth v. Devlin,* 221 Pa.Super. 175, 289 A.2d 237 (1972).'

*Commonwealth v. Simmons,* 295 Pa.Super. 72, 83, 440 A.2d 1228, 1234 (1982), quoting *Commonwealth v. Kazior,* 269 Pa.Super. 518, 524, 410 A.2d 822, 824–825 (1979). See also: *Commonwealth v. Chase,* 394 Pa.Super. 168, 172, 575 A.2d 574, 576 (1990); *Commonwealth v. Ellis,* 354 Pa.Super. 11, 17–18, 510 A.2d 1253, 1256 (1986) (en banc).

In the instant case, the suppression court, in denying the motion for suppression, reasoned as follows:

Given the time of day, the locus of the automobile in an area known for active drug trafficking, the race of the occupants of the car, the observation of men approaching the automobile in which the defendants were seated, the gesture of one of the men placing his hand inside the passenger compartment of the car and the immediate exit of the car from the parking lot, the police possessed probable cause to believe that they had witnessed a drug transaction.

When police observe citizens engaged in seemingly suspicious transactions on public streets, the determination of whether probable cause exists can be a difficult one. In this regard, the Pennsylvania Supreme Court has observed that "all of the circumstances surrounding a transaction between citizens are to be considered in determining whether law enforcement officers have acted arbitrarily or have acted on the basis of probable cause." *Commonwealth v. Lawson,* 454 Pa. 23, 27, 309 A.2d 391, 394 (1973), citing *United States v. Henry,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). The Court in *Lawson* elaborated that:

All of the detailed facts and circumstances must be considered. The time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where the small items were kept by one of the sellers is important, the movements and manners of the parties are important.

. . . .

It is difficult to isolate any one fact or circumstance and assign to it a given weight. If any one of the facts and circumstances, which we have detailed, were missing, the necessary conclusion of probable cause might not be allowable. Every commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause for an arrest.

*Id.* 454 Pa. at 28–29, 309 A.2d at 394. See also: *Commonwealth v. Vassiljev,* 218 Pa.Super. 215, 275 A.2d 852 (1971) (police did not have probable cause to arrest defendant after observing something being passed by him to another man on public street, at 11:15 p.m., where police did not see what had been passed). Compare: *Commonwealth v. Jenkins,* 401 Pa.Super. 580, 585 A.2d 1078 (1991) (probable cause found when police, using binoculars, twice observed defendant open trunk of car and place his hand in plastic bag which contained numerous packets filled with white substance where police had unobstructed view and events occurred in high crime area).

In *Commonwealth v. Greber,* 478 Pa. 63, 385 A.2d 1313 (1978), police had been watching a bowling alley in a high crime area. They observed defendants drive their vehicle into the parking lot of the bowling alley and hand a shopping bag to a juvenile. The juvenile had been standing on the lot, acting as though he were waiting for someone. Upon receiving the bag, the juvenile lifted it to his face and appeared to smell its contents. At this point, the police moved in, blocking the path of the defendants' vehicle and seizing the shopping bag from the juvenile. Marijuana was found in the bag and later in the defendants' vehicle. The trial court ordered that the marijuana be suppressed because the police had lacked probable cause to make a lawful arrest. On appeal, the Commonwealth conceded that probable cause had been lacking but asserted that the police had made a lawful investigative *Terry*[3] stop. The Supreme Court rejected this argument and affirmed the suppression court's order. In a plurality opinion the Court reasoned as follows:

> The acts of appellees here—riding in a car, stopping at a bowling alley, exchanging a package—were all acts that were outwardly innocent. Cf. *United States v. Henry,* 361 U.S. 98, 103–104, 80 S.Ct. 168 [171–172], 4 L.Ed.2d 134, 139–40 (1959). What occurred here was one isolated transaction, not a series of transactions which, under

3. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

certain circumstances might indicate that an exchange of drugs was taking place. *See, Commonwealth v. Lawson, supra.* Officer Matuszak had no prior information that a drug transaction would occur on this evening. There was simply no reasonable basis to conclude that this particular package, a shopping bag large enough to contain a countless number of objects, happened to contain illegal drugs. While the officer's curiosity might have been aroused by the action that was witnessed, and while he might have had a hunch that illegal contraband was involved, that is not sufficient. See *Terry v. Ohio, supra; Commonwealth v. Jones, supra.*

*Commonwealth v. Greber, supra,* 478 Pa. at 68, 385 A.2d at 1316 (per Manderino, J.). In a concurring opinion, Justice Roberts concluded that it was unnecessary to determine whether the police had had sufficient basis to make a *Terry* stop, because, in any event, they had arrested the defendants without probable cause. Although a majority of the Court was unable to agree upon the rationale for its decision, its holding was that under facts similar to those in the instant case, probable cause to make an arrest was not present. See also: *Commonwealth v. Martinez,* 403 Pa.Super. 125, 588 A.2d 513 (1991) (defendant's presence on street corner at 12:20 a.m., her walking away rapidly upon spotting police and police observation of a bulge in her jacket pocket did not justify investigative *Terry* stop); *Commonwealth v. Espada,* 364 Pa.Super. 604, 528 A.2d 968 (1987) (mere presence in high crime area does not justify *Terry* stop). Compare: *Commonwealth v. Frank,* 407 Pa.Super. 500, 595 A.2d 1258 (1991) (reasonable suspicion for *Terry* stop existed where police observed defendant in high crime area in company of known drug dealer and later saw him exchange unidentified objects with three unknown men; when defendant fled after police had tried to stop his vehicle, reasonable suspicion ripened into probable cause to arrest); *Commonwealth v. Patterson,* 405 Pa.Super. 17, 591 A.2d 1075 (1991) (*Terry* stop justified by combination of neighbors' reports of drug activity and police observation of

suspicious heavy foot traffic in alley behind alleged crack house during early hours of morning).

After careful study of the facts in the instant case and a review of the decided cases, we are constrained to agree with appellants that the police lacked probable cause to arrest them and to make a search incidental thereto. The police had no prior information or reason to believe that appellants would be engaging in a drug transaction, nor did they observe appellants in the company of known drug dealers. While conducting surveillance of an area known for high drug activity, police observed appellants engage in an unknown discourse with two unidentified black males. Although one of the black males was observed reaching into appellants' vehicle, the police did not see an exchange of either objects or money. It could not be said with any degree of certainty under these circumstances that an isolated contact between appellants and two black males involved any kind of commercial transaction whatsoever, let alone a sale of drugs. It may be that the circumstances were sufficient to cause the police to become suspicious of appellants' activities. However, it is abundantly clear that the police did not possess probable cause sufficient to allow them to stop appellants' vehicle, order appellants out of the car, place them in handcuffs and conduct a full search of the vehicle.

It follows that the suppression court erred when it refused to suppress the small amount of cocaine seized by police from appellants' vehicle. For similar reasons, the court should have suppressed the inculpatory statement by appellant, O'Hara. Such a statement was fruit of an illegal arrest. See: *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). See also: *Commonwealth v. Nelson,* 488 Pa. 148, 411 A.2d 740 (1980) (plurality opinion); *Commonwealth v. Farley,* 468 Pa. 487, 364 A.2d 299 (1976). Therefore, we will reverse the judgments of sentence and remand for a new trial, at which the illegally seized evidence may not be used.

It may be, as a practical matter, that the absence of this evidence will prevent a conviction or even a retrial. However, "[o]ne of the prices we have to pay for the security which the Fourth Amendment bestows upon us is the risk that an occasional guilty party will escape." *Commonwealth v. Conn,* 377 Pa.Super. 442, 454, 547 A.2d 768, 774 (1988), quoting *Commonwealth v. Newman,* 429 Pa. 441, 448, 240 A.2d 795, 798 (1968).

The judgments of sentence are reversed, and the charges against appellants are remanded for a new trial. Jurisdiction is not retained.