ROMAN MOSAIC AND
TILE COMPANY

v.

THOMAS P. CARNEY, INC. and The
Continental Insurance Co.

Appeal of Thomas P. Carney, Inc.

Roman Mosaic and Tile Company

v.

Thomas P. Carney, Inc. and the
Continental Insurance Co.

Appeal of the Continental
Insurance Co.

Roman Mosaic and Tile Company,
Appellant,

v.

Thomas P. Carney, Inc. and The
Continental Insurance Co.,
Appellees.

Superior Court of Pennsylvania.

Argued Feb. 10, 1999.
Filed April 9, 1999.

David J. Kenny, Hamilton, N.J., for Thomas P. Carney, Inc.

John H. Widman, King of Prussia, for Roman Mosaic and Tile Company.

Harry R. Blackburn, Philadelphia, for The Continental Insurance Company.

Before STEVENS, LALLY–GREEN, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Before this Court are the direct appeals of Thomas P. Carney, Inc. ("Carney") and Continental Insurance Company ("Continental") and the cross-appeal of Roman Mosaic and Tile Company ("Roman"). After a hearing without a jury on the merits of Roman's complaint, the trial court found in favor of Roman and against Carney and Continental in the amount of $611,763.22, plus interest and costs. We affirm.

¶ 2 On May 11, 1992, Carney was retained as the general contractor by the City of Philadelphia to renovate numerous terminals at the Philadelphia International Airport. Continental executed a surety bond in the amount of $20,198,681.00. Part of the renovation included the laying

of terrazzo flooring. The flooring work was subcontracted to Roman per its bid of $11.50 per square foot, totaling $2,685,-800.00, not including final resealing and buffing of the floor ("final cleaning"). A separate bid for $90,000.00 was submitted by Roman for the final cleaning job, but this bid was rejected by Carney.

¶ 3 Roman proceeded to install the terrazzo flooring according to specification of the project. During the course of the project, Carney was often late in advancing payment to Roman, and Roman resorted to two work stoppages in order to force Carney to remit moneys due under the contract. Also during the course of the project, the City of Philadelphia modified the scope of the project, reducing the amount of terrazzo flooring to be installed. Roman had already purchased the tile needed for much of the project and, per the terms of the subcontract agreement, requested a credit of $330,247.00 for the cost of the purchased tile which would now not be needed. Alternatively Roman requested payment of a $22,000.00 restocking fee. Carney failed to accede to either request.

¶ 4 Roman substantially finished the project in good and workmanlike manner by August 1994, excepting a final "punch list" of cosmetic defects that needed to be corrected. By October 1994, Roman had received approximately 67.27% of the money due it. Roman subsequently stopped work on the project and refused to continue unless moneys due were paid. Testimony elicited at trial indicates that the final cleaning would have rectified 96% of the punch list items. In December, 1994, Carney contracted the final cleaning project to Marine Deck and Floor Company ("Marine") on a time and material basis.

¶ 5 The City, however, was unhappy with the timeliness of Marine's work, which resulted in Roman being awarded the remaining part of the cleaning project; by May 1995, only one-third of the job was completed. Roman was to be paid for its work on a pro-rated basis commensurate with its earlier bid and the percentage amount of work needed to finish the job, or $71,581.00. Despite final approval of the work by the City of Philadelphia and proper invoicing by Roman, Carney failed to pay the amount due.

¶ 6 Roman filed suit against Carney and Continental in May, 1995. A four-day bench trial was held from December 2 to December 5, 1996. The trial court issued its decision in favor of Roman on September 3, 1997. Carney filed a notice of appeal on September 26, 1997, and Continental followed suit on October 1, 1997. Roman then filed notice of cross-appeal on October 10, 1997. The trial court issued a Rule 1925 opinion on December 31, 1997. On March 12, 1998, the Central Legal Staff of this Court informed counsel for Carney that the appeal was premature and that because post-trial motions had not been filed, the issues presented had been waived. Continental subsequently filed a motion with the trial court for post-trial relief *nunc pro tunc* on March 12, 1998, and Carney followed with a separate but likewise motion on March 17, 1998. Roman, in turn, filed motions to strike. By order issued May 11, 1998, the trial court denied Roman's motion to strike and simultaneously denied appellants' petitions for post-trial relief on the basis set forth in its September 3, 1997, opinion. On June 18, 1998, upon praecipe of Roman, an entry of judgment was issued. This appeal followed.

¶ 7 Initially we address two procedural questions raised by Roman on cross-appeal: whether the trial court erred in granting Continental's and Carney's motions for post-trial relief *nunc pro tunc* and whether the trial court erred by not permitting Roman to amend its complaint.

¶ 8 Our standard of review in reviewing a trial court's grant of appeal *nunc pro tunc,* when objections are raised, is one of an abuse of discretion. *Millard v. Nagle,* 402 Pa.Super. 376, 587 A.2d 10, 12 (1991). The trial court is required to

set forth its rationale for considering the merits of untimely post-trial motions. *Id.* Roman did raise objections to the appellants' petitions for relief, in the form of a motion to strike. Here, the trial court appended an extended footnote to its May 11, 1998, order granting the appeal *nunc pro tunc* but dismissing the post-trial motions. The court noted that all parties filed their original appeals without benefit of post-trial motions simply because counsel failed to properly consult the rules of civil procedure. The court did, however, limit the issues considered on post-trial motions to those raised in the original statements of issues raised on appeal, thus minimizing surprise and prejudice to Roman. The court also noted that the procedural error was not objected to initially by Roman. We do not find that the trial court abused its discretion in this matter.

■ ¶ 9 We also find, though, that Roman failed to preserve the issue of its amended complaint for appellate review. Keeping in step with the other litigants in this case, Roman also filed its original notice of appeal before seeking post-trial relief from the trial court. Unlike the other litigants, however, Roman did not petition the trial court for permission to file post-trial motions *nunc pro tunc.* Instead, it sought to quash the other litigants' motions for relief as untimely filed. It is well established that issues not raised in post-trial motions are waived for appellate review. *Dollar Bank v. Swartz,* 540 Pa. 369, 657 A.2d 1242, 1245 (1995). Moreover, we have previously held that the failure to file post-trial motions relieves this Court of the need to address the merits of an appellant's complaint. *See, e.g., Matthews v. Joines,* 700 A.2d 1322 (Pa.Super.1997). We are therefore compelled to find that, by failing to petition the trial court to file post-trial motions *nunc pro tunc,* Roman has waived the issue regarding the trial court's decision to not allow amendment of its complaint.

¶ 10 The questions raised by appellants are properly before this Court. Specifical-

ly, appellants complain that the trial court: (1) failed to apply clear terms dictating unit prices to be applied to changes in the work; (2) failed as a matter of law to determine the costs of the credits; (3) improperly admitted and considered extrinsic evidence in interpreting the contract; and (4) erred in finding that Carney breached the contract by failing to make timely payments to Roman. Continental additionally complains that the trial court: (5) erred as a matter of law by adding interest to the judgment; and (6) erred as a matter of law by awarding costs attributed to materials not used in the project.

■ ¶ 11 Appellants' fourth complaint is essentially a sufficiency of the evidence question. Our scope of review in a non-jury trial is limited to whether findings of fact are supported by competent evidence and whether the trial court committed an error of law. *Berwick v. Keuler Realtors,* 407 Pa.Super. 528, 595 A.2d 1272 (1991). Furthermore, it is within the province of the trial judge, sitting without a jury, to determine the credibility of the witnesses and weigh their testimony. *Allegheny County v. Monzo,* 509 Pa. 26, 500 A.2d 1096 (1985). Moreover, our Supreme Court has stated:

> As long as sufficient evidence exists in the record to support the finding found by the trial court, as factfinder, we are precluded from overturning that finding and must affirm, thereby paying the proper deference due to the factfinder who heard the witnesses testify and was in the sole position to observe the demeanor of the witnesses and assess their credibility. Thus rule of law is well established in our jurisprudence and is rooted in concepts of fairness, common sense and judicial economy.

*Commonwealth, Dept. of Transp. v. O'Connell,* 521 Pa. 242, 555 A.2d 873, 875 (1989).

■ ¶ 12 Here, the trial court found that the unambiguous terms of the contract required Carney to make payments to Roman within five days of receiving

payment from the City, and that a retainage of 10% was to be reduced to 5% once the project was 50% completed. These findings are supported by the evidence of Exhibit P–17, ¶¶ 7, 4. The court also found that Carney did not reduce the percentage of billing retainage to Roman even after the City had reduced its retainage to Carney and that Carney did not pay Roman promptly within five days of receiving payment from the City. These findings are supported by testimony at N.T., 12/2/96, at 85, 106; 12/3/96, at 177, 181, 186–207; Exhibit P–22—P–29. We conclude that the evidence was sufficient for the factfinder to find that Carney breached its contract with Roman in that it failed to make timely payments.

¶ 13 Appellants' complaints one through three all concern the trial court's interpretation of the contract between Carney and Roman. The interpretation of a contract is a matter of law and an appellate court need not defer to the conclusions of the trial court. *Halpin v. LaSalle University*, 432 Pa.Super. 476, 639 A.2d 37 (1994). Moreover, when the terms of a contract are clear and unequivocal, meaning must be determined from the language itself. *Id.*

¶ 14 Appellants first argue that the trial court failed to adhere to the plain meaning of the terms of the contract when it found that the $13.00 per square foot credit for cancelled work demanded by Carney was unreasonable. Here, when the City downscaled the size of the project by 40,000 square feet, a modification of the subcontracted price was necessary because of the deleted work. However, Roman had already purchased some of the materials in anticipation of performing the work. In response to the change in work orders, Roman requested a credit against the original contract price in the amounts of $11.25 per square foot of work deleted and for which materials had not been pre-purchased (reflecting the expense of labor and material that would not be incurred), and $5.06 per square foot of work deleted for which materials had already been purchased (reflecting only the labor expenses that would not be incurred). This credit was intended to be deducted from the total contracted price to arrive at the new amount due Roman for performing the modified project. Carney, however, insisted that the credit should be $13.00, which was the price per square foot Carney received from the City.

¶ 15 Appellants base their argument on an interpretation of a clause in the subcontract which states that the Carney/Roman contract provides that it incorporates all the terms of the contract between Carney and the City and that, "[s]ubcontractor agrees to be bound to the Contractor and the Owner [the City] by the terms and provisions thereof." Appellant Carney's brief, at 16. A more complete reading of paragraph one of the subcontract reveals:

> The work shall be performed in accordance with the terms and provisions of the contract, *unless modified herein,* between the Owner and the Contractor, including all the General and Special Conditions, drawings, specifications and other documents forming, or made by reference, a part of the contract between the Contractor and the Owner, all of which shall be considered a part of the subcontract by reference, thereto, and the Subcontractor agrees to be bound to the Contractor and the Owner by the terms and provisions thereof.

Subcontract agreement, Exhibit P–17 (emphasis added). Paragraph five contains the following provision:

> In the event that the owner requires changes to work, the Subcontractor agrees to perform requested additional and/or deleted work in accordance with the specific prevailing wage rates and/or union rates ...

> The Subcontractor agrees to supply all materials at actual invoiced amount. Not amount of additional work shall be

the sum of material and labor plus 15% overhead and profit.

Subcontract agreement, Exhibit P–17.

▌ ¶ 16 We believe that a fair reading of the terms of the contract indicate that any credit given for deleted work must be based on the sum of labor, materials and profit, and that the credit provision set forth in paragraph five modifies the snippet cited by appellants. We note that paragraph four, which calls for a recitation of the breakdown of labor and materials costs of the total contract, is blank. In cases where the terms are ambiguous or the complete agreement is not recorded, the court must examine the surrounding circumstances to determine the parties' intent. *Greene v. Oliver Realty Inc.*, 363 Pa.Super. 534, 526 A.2d 1192 (1987). We must, therefore, look elsewhere to determine the labor/materials breakdown for Roman's credit.

▌ ¶ 17 Such evidence is contained in the testimony of Paul Travistan, N.T. 12/2/96, at 41–80, and documents Exhibits P–6—P–15; P–31B—P–31J. This evidence established what occurred during the bidding process and how Roman arrived at its bid price. Travistan testified that his initial bid was based upon a square foot cost of $11.18, rounded up to $11.25 due to the fact that the terrazzo flooring would have to be laid out in sections within plywood "cocoons" in order to prevent airport customers from the hazards of the project. A review of the materials shows that a square foot cost of $11.25 and a base labor price of $5.06 per square foot is not unreasonable. The trial court was therefore correct in determining the credit value of deleted work for which materials had not been purchased at $11.25.

▌ ¶ 18 The trial court also correctly found that a credit of $5.06 for each deleted square foot of work where the material had already been purchased was reasonable. Looking again to the plain meaning of the subcontract agreement at paragraph one, which incorporated by reference the terms of the Carney/City contract, the trial court directed its attention to the Carney/City contract. At section 90–04, Div. I–48—49, the contract calls for the reimbursement of costs incurred for materials purchased before the work related to those materials was omitted from the project. In this instance, we find appellants' argument that the terms of the Carney/City contract "flow through" to the Carney/Roman contract reasonable. Given this, then, the reimbursement for cost of materials should be deducted from the credit for deleted work, *i.e.*, only credits for labor costs should be extended. This is what the trial court did, and we find it to be the correct approach.

¶ 19 Our foregoing analysis provides answers to appellants' next two issues, *i.e.*, whether the trial court erred in determining the reasonable cost of the credits and whether the trial court properly admitted extrinsic evidence in the form of pre-contract calculations. These issues have been addressed, and we find appellants' arguments to be equally without merit.

▌ ¶ 20 Appellant Continental further complains that the trial court erred by adding interest to the judgment and by awarding costs attributed to materials not used in the project. This last issue is of dubious merit and we reject it out-of-hand. Appellant argues that the materials bought for use in the project which were later rendered non-usable due to deletions in the project were not actually "furnished" to the project and thus fall outside the scope of the bond and surety. Appellant offers no authority for this proposition and we are certain there is none. It hardly needs to be said that Roman would not have purchased the materials had it not anticipated using them in the project. As appellant insured the performance of the contractor according to the terms of the contract, and the contract provided for reimbursement of material costs purchased in anticipation of projects later deleted, we find the award of these costs proper. *See also Walters Tire Serv. v. National Union Fire Serv.*, 434 Pa. 235,

252 A.2d 593, 595 (1969) ("[T]he proper test to be applied is whether or not ... there is a reasonable and good faith expectation by the supplier at the time of delivery that the material under all the circumstances would be substantially used up in the project under way. If so, the surety is liable.").

■ ¶ 21 Appellant Continental finally argues that the trial court erred in awarding interest to Roman, on the grounds that the terms of its bond limits its obligation to "materials furnished, equipment or machinery rented, services rendered by public utilities, and labor supplied or performed in the prosecution of the work." Continental's assertion runs counter to well-established case law. In *Fort Pitt Bridge Works v. Continental Casualty Co.*, 429 Pa. 366, 240 A.2d 493 (1968), our Supreme Court stated that a surety bond that permits recovery by a contractor for "such sums as may be justly due," pre-judgment interest may be molded into a verdict. Continental's reliance on *Reliance Universal v. Ernest Renda Contracting Co.* 308 Pa.Super. 98, 454 A.2d 39 (1982), is ill founded. In *Reliance*, the trial court awarded the interest damages based upon a finding that the contractor had independently agreed to pay interest on late payments. The appellate court found that the surety was not liable on an agreement for payment of charges or costs that fall outside the terms of the bond. That is not the case here. The trial court's determination makes clear that the interest award is for pre-judgment interest and not for finance charges or delay damages. Trial court's conclusions of law, 9/3/97, at 32, ¶ 11. We find, therefore, that trial court properly awarded interest damages.

¶ 22 Judgment affirmed.

¶ 23 STEVENS, J., Concurs in the Result.

**In re J.J.F., J.R.F.**