99 Pa. Commonwealth Ct. 373 (1986)
513 A.2d 562
Commonwealth of Pennsylvania, Department of Transportation, Petitioner
v.
Brayman Construction Corporation-Bracken Construction Company, a Joint Venture, Respondent.
No. 1286 C.D. 1982.
Commonwealth Court of Pennsylvania.
Argued May 13, 1986.
July 31, 1986.
Argued May 13, 1986, before Judges CRAIG and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.
*374 John J. Bucky, Jr., with him, George D. Wenick, Michael D. Reed, Assistant Counsel, Spencer A. Manthorpe, Chief Counsel, and Jay C. Waldman, General Counsel, for petitioner.
C. Grainger Bowman, McNees, Wallace & Nurick, for respondent.
OPINION BY JUDGE DOYLE, July 31, 1986:
This is an appeal by the Department of Transportation (DOT) from an order of the Board of Claims (Board) awarding the sum of $24,214.14, together with six percent interest from September 10, 1976, "to Brayman Construction Corporation-Bracken Construction Company, a Joint Venture." (Brayman-Bracken).
The Board found that on or about July 27, 1973 Brayman-Bracken and DOT entered into a contract for the construction and improvement of a section of state highway in Allegheny County. A portion of the construction and improvement involved the fabrication and erection of overhead sign structures. Brayman-Bracken, the general contractor, subcontracted this portion of the work to an electrical contractor, Broadway Maintenance *375 Corporation (Broadway) which in turn subcontracted it to Bruce & Merrilees Electric Co. (Bruce-Merrilees). Bruce-Merrilees subcontracted the fabrication of the sign structures to a fabrication subcontractor, Conn. Welding and Machine Company (Conn). DOT specifications required that before fabrication, the sign structure supplier (here Conn) submit shop drawings for approval to DOT. The usual procedure in submitting drawings is for the supplier to submit to his general contractor (Conn's general contractor was Bruce-Merrilees) who in turn submits to his general contractor and so on up the chain. The Board found that on August 15, 1974 Conn submitted its drawings together with a letter of transmittal to Bruce-Merrilees which, within a reasonable period, forwarded the drawings to Broadway. Broadway submitted the drawings to Brayman-Bracken which in turn submitted them in a timely manner to DOT. Because none of the contractors ever heard from DOT with respect to the drawings, Conn, in October of 1975, resubmitted the drawings again following the chain of privity. In addition, the Board found that Bruce-Merrilees frequently asked DOT field representatives about both sets of drawings.
Bruce-Merrilees first became aware that DOT had "approved" the original shop drawings on April 8, 1976 when an employee of Bruce-Merrilees, while visiting the DOT field office-trailer on other business, inquired, as he had before, on whether any action had been taken by DOT on the drawings. At that time two DOT employees discovered the original drawings somewhere in the trailer. These drawings did not contain DOT's certification of approval but contained only the signature of a DOT consultant indicating the consultant's approval as modified some thirteen months earlier  March 12, 1975. Conn was unwilling to accept this signature as approval absent official DOT certification. Six days later *376 DOT alleviated Conn's concern by issuing a letter over the signature of its district engineer, which letter indicated that DOT considered the drawings approved. Subsequent to receipt of this letter Conn immediately ordered its material; its fabrication of the structures then took approximately six months to complete.
Because of the twenty-month delay from the time Conn first submitted its drawings (August 15, 1974) until they were discovered in the DOT trailer (April 8, 1976) and approved, the signs could not be fully erected before the scheduled opening of the highway on August 31, 1976. Thus, the structures had to be erected while the highway was open to traffic causing an increase in labor, office and equipment costs. The Board found that had Brayman-Bracken and its subcontractors received the approved drawings from DOT on or about November 1974, as the parties had estimated, the structures would have been erected well before the August 31, 1976 highway opening. It further found the delay attributable to DOT and assessed the damages noted above.
On appeal DOT raises several issues for our consideration. We shall examine them seriatim, keeping in mind that our scope of review of a Board order is limited to determining whether the order is in accordance with the law and whether the findings of fact are supported by the evidence. Department of Transportation v. Mosites Construction Co., 90 Pa. Commonwealth Ct. 33, 494 A.2d 41 (1985).
DOT's first contention is that a general contractor cannot recover on behalf of its subcontractor before the Board where the general contractor has neither alleged nor proved that it (as opposed to its subcontractor) suffered damages. It is not disputed that all damages proven were damages sustained by Bruce-Merrilees. Further, there is no evidence of record to establish the liability, if any, of Brayman-Bracken to Bruce-Merrilees.
*377 DOT bases its argument upon Severin v. United States, 99 Ct. Cl. 435 (1943), cert. denied, 332 U.S. 733 (1944). Under Severin a general contractor cannot recover unless it has directly suffered damages or bears liability to the subcontractor as a result of the alleged breach. This doctrine has not been adopted in Pennsylvania and considering that the question here must be determined by examining the Board's jurisdictional grant of authority under state law,[1] we do not view a federal case discussing the right of recovery of a general contractor on behalf of his subcontractor under federal law to be particularly illustrative.
Pursuant to Section 4 of the Act of May 20, 1937, which defines the Board's jurisdiction, the Board has exclusive jurisdiction "to hear and determine claims against the Commonwealth arising from contracts." This grant of jurisdictional authority has been recognized to include the claims of subcontractors. In Armour Rentals, Inc. v. General State Authority, 4 Pa. Commonwealth Ct. 517, 287 A.2d 862 (1972), unpaid subcontractors brought suit against the General State Authority to recover sums not paid because of the financial collapse of both the general contractor and its surety. The case came before this Court in our original jurisdiction. We sustained preliminary objections raising the question of this Court's jurisdiction, and held that the cause of action in assumpsit belonged before the Board even though the plaintiff subcontractor was not a signatory to the contract with the Commonwealth. Further, we indicated that the Board's jurisdiction is invoked when the plaintiff remains unpaid by the Commonwealth.
*378 In Brocker Manufacturing & Supply Company v. United Bonding & Insurance Company, 8 Pa. Commonwealth Ct. 110, 301 A.2d 438 (1973) a subcontractor filed a complaint in this Court, as an original action, against his general contractor, the general contractor's surety and the Commonwealth seeking reimbursement for steel reinforcing bars supplied to the general contractor. In countering the defendant's argument that jurisdiction under the Armour case was with the Board, the plaintiff argued that, unlike Armour, the Commonwealth in Brocker was only a stakeholder and that the actual dispute was between the general contractor and the subcontractor. It further argued, however, that the Commonwealth as stakeholder was an indispensable party to the litigation and thus that jurisdiction was with this Court, not the Board. Judge CRUMLISH (now President Judge) rejected this argument and wrote:
The Commonwealth is not completely isolated from the contractual dispute between the subcontractor and contractor, because the Commonwealth ultimately must pay for the work completed. A dispute between the contractor and the subcontractor to a contract of which the Commonwealth is also a party necessarily affects the Commonwealth, and falls within the jurisdiction of the Board. ...
Brocker, 8 Pa. Commonwealth Ct. at 113, 301 A.2d at 440.
We believe that the broad reading of the Board's jurisdiction in Brocker is equally applicable to the instant case. Accordingly, we hold that this case was properly within the Board's jurisdiction.
DOT makes much of Brayman-Bracken's motion to amend its caption before the Board to indicate that the suit was brought by Brayman-Bracken "for the use of Bruce-Merrilees." We fail to see how DOT was prejudiced *379 by this inasmuch as the original complaint filed by Brayman-Bracken clearly averred that Bruce-Merrilees was a subcontractor (an averment admitted by DOT) and that Bruce-Merrilees had sustained damages (an averment denied by DOT). We thus agree with Brayman-Bracken that DOT had adequate notice that Bruce-Merrilees was the entity for whom damages were sought and that amending the caption amounted to nothing more than permitting a technical clarification.
DOT further argues that the June 17, 1980 amendment to the caption constituted the bringing of a new claim beyond the six-month statutory time limit applicable to the Board. This argument is without merit. The claim on behalf of Bruce-Merrilees had been clearly asserted in the original complaint which was timely filed and conforming the caption to the complaint did not constitute the bringing of a new claim.
DOT's final contention is that the Board erred in attributing the delays in the shop drawing approval process solely to it. DOT asserts that to prove that the delay was attributable to DOT, Brayman-Bracken would need to prove when DOT received the drawings and how long it took for approval and transmission of them back to Brayman-Bracken. Unfortunately, there was no testimony on when DOT received the drawings. There is testimony, however, that the drawings were forwarded through the chain of privity and that a period of ten to twelve weeks would be the normal amount of time for the approval and return process. DOT did not rebut this testimony nor did it offer any evidence that any of the contractors delayed the transmission process. Additionally, DOT did not counter with testimony of its own on when it received the drawings. We thus believe that the Board had sufficient testimony that the contractors each forwarded the drawings in turn, and that it drew a reasonable inference, based on the absence of contradictory *380 testimony by DOT, in deciding that the delay was with DOT.
What is clearly established in the record is that the drawings were received by DOT at some point prior to March 17, 1975, the date they were approved by the DOT consultant. DOT then asserts that the drawings and the approval were forwarded two days later to Brayman-Bracken. It relies upon a cover letter from DOT to "Brayman Construction Corporation" indicating approval of the drawings which were purportedly attached to the letter. Receipt of this letter was denied. DOT argues that under the "mailbox rule," which provides that proof of mailing raises a rebuttable presumption that the mailed item was received, it must be presumed that Brayman-Bracken received DOT's approval. The Board found that this presumption was rebutted by the testimony of a witness who stated that Brayman-Bracken had not received the approval letter. But, the Board's determination that this evidence rebutted the presumption was erroneous as a matter of law. It is well settled that the presumption in the mailbox rule is not nullified by testimony denying receipt of the item mailed. Berkowitz v. Mayflower Securities, Inc., 455 Pa. 531, 317 A.2d 584 (1974); Meierdierck v. Miller, 394 Pa. 484, 147 A.2d 406 (1959).
While we hold that the presumption was not rebutted, we need not reverse the Board's determination. This is because the mailbox rule is inapplicable in the instant case. The rule applies only when there is evidence that the item was mailed. It is true that evidence of actual mailing is not required. Instead, "when a letter has been written and signed in the usual course of business and placed in the regular place of mailing, evidence of the custom of the establishment as to the mailing of such letters is receivable as evidence that it was duly mailed." Christie v. Open Pantry Marts, 237 Pa. *381 Superior Ct. 243, 246, 352 A.2d 165, 166-67 (1975), quoting McCormick, Evidence §195 at 464 (2nd ed. 1972) (emphasis added). The author of the letter never testified that it was written in the regular course of business; in fact, he did not testify at all. Additionally, no one attested to the fact that the letter was placed in the regular place of mailing. Instead, DOT sought to prove the mailing only by having an engineer testify that because the copy of the letter was found in DOT's office files the letter must have been mailed since copies of letters are placed in the files only after being mailed. But proof of office filing procedures without proof that the letter was written in the regular course of business and was placed in the usual place of mailing does not meet the burden to establish mailing and bring the mailbox rule into play. Thus, while the Board erred in applying the presumption and in accepting the denial of receipt as legally sufficient to rebut it, its error was harmless. The simple fact is that DOT never established that it sent its notice of approval to Brayman-Bracken anytime prior to April 19, 1976. Accordingly, the Board acted properly in attributing the delay to DOT and we therefore affirm its order.

ORDER
Now, July 31, 1986, the order of the Board of Claims, Docket No. 533, dated April 30, 1982, is hereby affirmed.
NOTES
[1] The Board is given "exclusive jurisdiction to hear and determine claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth . . ." in Section 4 of the Act of May 20, 1937, P.L. 728, as amended, 72 P.S. §4651-4.