Dr. Jack PORTER, Appellee,

v.

Cleo KARIVALIS and George Karivalis, Mitchell S. Greenspan and Todd M. Berk, Esquire and t/a Greenspan & Berk, P.C., now known as Greenspan, Berk & Gaber, P.C.

Appeal of Cleo KARIVALIS and George Karivalis, Appellants.

Superior Court of Pennsylvania.

Argued June 23, 1998.
Filed Oct. 1, 1998.

Michael J. Ruthenberg, Philadelphia, for appellants.

Michael L. Block, Norristown, for appellee.

Before POPOVICH, ORIE MELVIN and SCHILLER, JJ.

ORIE MELVIN, Judge.

This is an appeal from a judgment of $8,389.29 entered against Mr. and Mrs. Karivalis for psychological services rendered by Appellee to Mrs. Karivalis following her involvement in an automobile accident. The trial court determined that Mr. Karivalis, despite his incarceration, was jointly responsible for the outstanding professional bill under the law of necessaries. We affirm.

The relevant facts and procedural history are as follows. Mrs. Karivalis was involved in an automobile accident and retained the law firm of Greenspan & Berk, P.C. to represent her in pursuing her claim for damages. During the course of the representation it became necessary for Mrs. Karivalis to undergo psychological therapy and treatment. Her attorney contacted Appellee, Dr. Jack Porter, a licensed psychologist, for the purpose of arranging psychological treatment for his client.

On or about May 2, 1988, Dr. Porter conducted his initial psychological examination of Mrs. Karivalis. Dr. Porter noted Mrs. Karivalis had been undergoing great stress, which resulted from the automobile accident. Pursuant to the agreement of the parties, Dr. Porter provided psychological services at an hourly rate of $125.00 from May 2, 1988 to August 28, 1990. In furtherance of the lawsuit, Dr. Porter provided copious narrative reports outlining the psychological treatment rendered to Mrs. Karivalis. Soon thereafter, Mrs. Karivalis settled her personal injury suit. Despite this settlement Dr. Porter's outstanding psychological treatment bill remained unpaid after repeated demands.

Dr. Porter commenced suit against both Mrs. and Mr. Karivalis and Mrs. Karivalis'

attorneys to recover his fee for professional services rendered. Prior to trial a settlement was reached with the attorneys. At the bench trial of this matter Mrs. Karivalis admitted liability, and the matter proceeded based upon the assertion that Mr. and Mrs. Karivalis were jointly responsible for the outstanding professional bill under the law of necessaries. It was argued that as the husband, Mr. Karivalis was under a legal responsibility to support his wife for medical services rendered to his wife.

At the time of trial, the following evidence was solicited from the witnesses to support the joint responsibility of Mr. and Mrs. Karivalis. Mrs. Karivalis testified that she was separated from her husband but still made long trips to visit him in prison. In fact, Mrs. Karivalis asked Dr. Porter to write a letter to the prison authorities explaining that she was suffering emotional problems due to the great distance she had to travel to visit her husband. Dr. Porter complied, and Mr. Karivalis was transferred closer to home. After his release from prison, he and Mrs. Karivalis lived together and at no time were divorce proceedings initiated. On August 18, 1997, the trial court entered a verdict in favor of Dr. Porter and against Mr. and Mrs. Karivalis jointly in the amount of $8,389.29. Mr. and Mrs. Karivalis filed a motion for post-trial relief which was denied. This appeal followed.

Mr. and Mrs. Karivalis now present the following issues for our review:

(1) Did the trial court err in finding that there was no denial of due process when the husband, who was separated from his wife and incarcerated, neither consented, expressly or impliedly, or even knew of the psychological services being rendered to his estranged wife, was held liable for the payment of same?

(2) Did the trial court err in finding that the husband was liable for payment for necessaries when he never consented, expressly or impliedly, or even knew of the psychological services rendered to his wife and the psychologist was looking to the insurance monies and/or settlement of a lawsuit, but not the husband's credit, for his payment?

(3) Is the statute, 23 Pa. C.S.A. § 4102 unconstitutional by virtue of the Equal Rights Amendment to the Constitution of the Commonwealth of Pennsylvania?

(4) Is the husband liable when the services rendered were not for the support and maintenance of the family as is provided in the statute?

Appellants' Brief at v.

We will address the constitutional challenges first, bearing in mind that all legislation duly enacted by the General Assembly carries a strong presumption of constitutionality, and any party challenging a statute's constitutionality bears a heavy burden to demonstrate that the legislation clearly, palpably and plainly violates a constitutional provision. 1 Pa.C.S.A. § 1922(3); *Commonwealth v. Stern*, 549 Pa. 505, 510–12, 701 A.2d 568, 571 (1997).

Mr. Karivalis first contends that because he did not consent nor have any knowledge of the services rendered to his wife, 23 Pa. C.S.A. § 4102 violates his due process rights under both the United States and Pennsylvania Constitutions in that it deprives him of his property by arbitrary state action. Section 4102 of the Domestic Relations Code provides:

**§ 4102. Proceedings in case of debts contracted for necessaries**

In all cases where debts are contracted for necessaries by either spouse for the support and maintenance of the family, it shall be lawful for the creditor in this case to institute suit against the husband and wife for the price of such necessaries and, after obtaining a judgment, have an execution against the spouse contracting the debt alone; and, if no property of that spouse is found, execution may be levied upon and satisfied out of the separate property of the other spouse.

23 Pa.C.S.A. § 4102.

█ The due process challenge made by Mr. Karivalis is substantive in nature and not procedural. As we noted in *Commonwealth v. Agnew*, 411 Pa.Super. 63, 600 A.2d 1265 (1991):

'[a]bsent a fundamental right, the standard of review for a substantive due process challenge is whether the statute at issue has a reasonable basis ....' To prevail under the rational basis test, the party asserting a due process violation must demonstrate that there is no [rational] relationship between the challenged [statute] and a legitimate state interest.

*Id.* at 69, 600 A.2d at 1268. "So-called substantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Mr. Karivalis does not advance any arguments nor cite any authority to support a showing as to how this legislation fails to rationally relate to a legitimate state objective. Consequently, we find this issue has been waived. Pa. R.A.P. 2119, 42 Pa.C.S.A.; *Fred E. Young, Inc. v. Brush Mountain Sportsmen's Ass'n,* 697 A.2d 984 (Pa.Super.1997).

■ Nonetheless, even if not waived we are convinced the statute is rationally related to a legitimate state interest in safeguarding the support and sustenance of the family and the individual members thereof. The instant statute will ensure the provision of needed medical services, as well as other necessities, to married persons and further recognizes that the institution of marriage involves shared wealth, expenses, rights and duties. Moreover, this statute furthers this interest in a reasonable manner by making the spouse who incurred the debt primarily liable and the nondebtor spouse only secondarily liable. Thus, a creditor must first pursue collection from the spouse who received the necessity. Only when that spouse's financial resources are insufficient to satisfy the debt may the other spouse's assets be subject to execution.

Next, we find Mr. Karivalis' challenge based upon the Equal Rights Amendment (ERA) to the Pennsylvania Constitution to be misplaced. He states "[t]here have been several lower court cases dealing with the applicability of the Equal Rights Amendment to the statute herein, with varying results." The cases to which Mr. Karivalis refers and upon which he relies deal with the effect the passage of the ERA had on the common law doctrine of necessaries[1] and were decided prior to the enactment of the instant statute. Specifically, in *Nan Duskin v. Parks,* 11 D & C.3d 299 (Pa.Com.Pl.1978), the trial court found the husband's common law duty to support his wife to be repugnant to the ERA and refused to extend to the wife a duty to support her husband, reasoning that it was beyond the court's power to so legislate.

■ In recognition of the gender bias under both the common law doctrine and the predecessor statute[2], the enactment of § 4102 is the legislature's response to passage of the ERA.[3] The thrust of the Equal Rights Amendment is to ensure equality of rights under the law in a gender-neutral fashion. *Swidzinski v. Schultz,* 342 Pa.Super. 422, 493 A.2d 93 (1985). Since § 4102 distributes the benefits and burdens equally between the sexes there is no violation of the ERA. Consequently, this challenge is also without merit.

■ Mr. Karivalis further argues that he cannot be held liable because there was no evidence presented that Dr. Porter was looking to his credit in rendering the services to his wife. Initially, we note the findings of a trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury and will not be disturbed absent an error of law or an abuse of discretion. *Lane Enterprises, Inc. v. L.B. Foster Co.,* 700 A.2d 465 (Pa.Super.1997). Our interpretation of the doctrine of necessaries does not require a creditor to look to one or

1. This doctrine placed a legal duty upon only the husband to support his wife and children, and where he neglected this duty, one who supplied necessaries for their support was permitted to recover the cost in an action under common law, which raised an implied promise, on the part of the husband, to pay.

2. 48 P.S. § 116, Act of April 11, 1848, P.L. 536, § 8.

3. Pa. Const. Art. I, § 28 provides: Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual.

the other spouse's credit. By the very nature of this doctrine the non-contracting spouse's obligation is implied. This implication was not changed by enactment of the instant statute. Thus, absent a specific agreement by one spouse to solely accept responsibility for the debt to the exclusion of the other spouse, both are liable as expressed in the statute. Our review of the record does not reveal any evidence whereby Mrs. Karivalis specifically agreed to be solely liable on this debt. Accordingly, we find no error.

■ Finally, Mr. Karivalis contends that at the time of the rendition of services he and his wife were separated. Therefore, he cannot be liable for these services as they could not have pertained to the support and maintenance of the family. This argument is simply a sufficiency of the evidence challenge. The mere fact of separation does not suspend the duty of spousal support. As we first noted in *Samuels v. Hirz*, 189 Pa.Super. 492, 151 A.2d 640 (1959), and which remains true today on a mutual basis,

> [i]t is well established in this Commonwealth that a husband assumes the duty of reasonably supporting his wife when he marries, and his duty is a continuing one of which, in the absence of grounds for divorce, he cannot relieve himself by separation. The obligation is imposed by law as an incident of the marital status.

*Id.* at 494, 151 A.2d at 641 (citations omitted). In *Bickerton v. Tanney*, 167 Pa.Super. 219, 74 A.2d 760 (1950), a husband was sued by a third party to recover the value of necessaries furnished to his wife and child who were living apart from the husband. In affirming the judgment against the husband, we held that to justify a recovery the only questions of fact required to be answered were: "Did the wife leave with cause; did the husband fail to provide necessaries for her; did the plaintiffs provide them and, if so, what was their value?" *Id.* at 221, 74 A.2d at 761. We

further opined: "[w]hen a husband turns his wife out of doors without any reasonable or just cause, or forces her to withdraw from him without any means for her support, the law implies that he has given her credit to supply herself with such necessaries as are suitable and proper for her to have ...." *Id.*

■ Similarly, absent a formal separation agreement or support order addressing the matter, we see no logical reason why this case should be decided any differently.[4] In this case Mrs. Karivalis testified she was separated from her husband since 1978 due to his infidelity but was still dependent upon him for financial support. She further testified that despite his infidelity she regularly visited her husband while imprisoned, specifically requested Dr. Porter's assistance in having her husband transferred to a prison closer to home and upon his release they resumed living together in the marital home. The trial court found Mrs. Karivalis' testimony that she was separated at the time she received treatment to be incredible. As a reviewing court, we will not usurp the trial court's fact-finding function. *Laudig v. Laudig*, 425 Pa.Super. 228, 624 A.2d 651 (1993). Accordingly, whether based upon a finding of no separation or based upon a justifiable separation, we find no error of law or abuse of discretion in the trial court's determination of this issue.

Judgment affirmed.

---

**4.** Our finding that Husband is liable for necessaries in no way impedes any claims he may have against Wife and any defenses she may have to such claims. Wife and Husband disagree about why she needed counseling and we know Wife settled a tort claim and received funds to pay Dr. Porter which were subsequently kept by Wife. This dispute can be sorted out by Husband and Wife in a different proceeding not part of this matter. Parenthetically we note that a party's treating doctors should be paid as a priority out of the proceeds of a settlement or award which necessitated such treatment before the proceeds are distributed to the party by the attorney and we question why this procedure was not followed in this case.