Michael BREZA, Appellee,

v.

DON FARR MOVING & STORAGE COMPANY, Appellant.

Superior Court of Pennsylvania.

Submitted June 10, 2002.
Filed July 2, 2003.

Louis W. Emmi, Pittsburgh, for appellant.

Joseph P. Nigro, Pittsburgh, for appellee.

BEFORE: ORIE MELVIN, BENDER, and TAMILIA, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Don Farr Moving & Storage Company, (Don Farr) appeals from the judgment entered against it following the denial of post-trial motions. On appeal, Don Farr claims his failure to appear for the arbitration hearing was due to a lack of notice. Therefore, Don Farr claims it was denied its right to due process and is entitled to a trial *de novo*. For the reasons that follow, we affirm.

¶ 2 The facts and procedural history may be summarized as follows. This action arises out of a civil dispute between Appellee Michael Breza (Breza) and Don Farr. Breza alleged that he sustained property damage when Don Farr transported his belongings from Pittsburgh to Los Angeles, California. A hearing was held before District Justice William J. Ivill on November 20, 2000, after which a judgment was entered in favor of Don Farr.

¶ 3 On November 22, 2000, Breza filed a notice of appeal and complaint with the Allegheny County Prothonotary. The Complaint listed June 11, 2001 as the arbitration hearing date and included notice pursuant to Allegheny County Local Rule

1303 that if one or both parties failed to appear, the matter would be heard before a judge on the same date and time. The docket reflects that the Prothonotary served Don Farr the notice appeal and a copy of the complaint by mail on November 27, 2000.[1] Don Farr did not file an answer to the complaint.

¶ 4 On June 11, 2001, Don Farr did not appear at the arbitration hearing. Pursuant to the local rule, the case was immediately transferred to the trial court for a non-jury trial. After Breza presented his case, a non-jury verdict was entered against Don Farr in the amount of $7,799.00.

¶ 5 On June 18, 2001, after receiving notice of the entry of a non-jury verdict against it, Don Farr filed a motion for reconsideration alleging that it had not been notified of the arbitration hearing. The trial court treated the filing as a motion for post-trial relief. On July 21, 2001, the motion was denied. Judgment on the verdict was entered on August 2, 2001. This appeal followed.

¶ 6 Appellant raises one question for our review:

Did the Court of Common Pleas err in determining that notice of an arbitration hearing was properly sent to Appellant, thus justifying, in [sic] Appellant's absence from said hearing because of his failure to receive any notice, awarding

---

1. Pa.R.C.P.D.J. Rule 1005A does not require that service be made upon the attorney of record. Instead, a notice of appeal and other papers may be served at the address of the appellee as listed in the complaint form filed in the office of the district justice or as otherwise appearing in the record of that office. Since the notice of judgment mailed to Breza by the district justice did not include the address of Don Farr's attorney, service upon Don Farr was in compliance with the rules.

*See* Trial Court Opinion, 7/21/01 at 2, fn 2. Furthermore, Allegheny County Local Rule 1005C provides that the Prothonotary shall mail by first class mail a copy of the notice of appeal and the complaint and that any return be noted on the court's docket. Pursuant to Pa.R.C.P.D.J. 1005C, such first class mailings by the Prothonotary under Allegheny County Local Rule 1005C operates as service and proof of service as required by Pa.R.C.P.D.J. 1005A and 1005B.

judgment to Appellee and denying Appellant any right to appeal with a trial *de novo?*

Appellant's brief at 6.

¶ 7 Our scope of review in a non-jury trial is limited to whether findings of fact are supported by competent evidence and whether the trial court committed an error of law. *Roman Mosaic and Tile Company v. Thomas P. Carney, Inc.,* 729 A.2d 73, 76 (Pa.Super.1999). The findings of a judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury and will not be disturbed absent an error of law or an abuse of discretion. *Porter v. Karivalis,* 718 A.2d 823, 826 (Pa.Super.1998).

¶ 8 Pennsylvania Rule of Civil Procedure 1303 sets forth the procedures to be utilized in providing notice to parties regarding arbitration hearings.

**Rule 1303.   Hearing.   Notice**

(a)(1) The procedure for fixing the date, time and place of hearing before a board of arbitrators shall be prescribed by local rule, provided that not less than thirty days' notice in writing shall be given to the parties or their attorneys of record.

(2) The local rule may provide that the written notice required by subdivision (a)(1) include the following statement:

"This matter will be heard by a board of arbitrators at the time, date and place specified but, if one or more of the parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties. There is no right to a trial de novo on appeal from a decision entered by a judge."

(b) When the board is convened for a hearing, if one or more parties is not ready the case shall proceed and the arbitrators shall make an award unless the court

(1) orders a continuance, or

(2) hears the matter if the notice of hearing contains the statement required by subdivision (a)(2) and all parties present consent.

Pa.R.C.P. 1303, 42 Pa.C.S.A. The Note following subsection (b) provides in pertinent part that "Following an adverse decision, a defendant who has failed to appear may file a motion for post-trial relief which may include a request for a new trial on the ground of a satisfactory excuse for the defendant's failure to appear." *Id.* at Note. The Explanatory Comment following the 1998 amendments provides that under such circumstances Pa.R.C.P. 218 applies. This rule provides in relevant part:

**Rule 218.   Party Not Ready When Case is Called for Trial.**

\* \* \*

(b) If without satisfactory excuse a defendant is not ready, the plaintiff may

(1) proceed to trial, or

. . .

(c) A party who fails to appear for trial shall be deemed to be not ready without satisfactory excuse.

Pa.R.C.P. 218, 42 Pa.C.S.A. The Note following subsection (c) provides in relevant part that "A decision of the court following a trial at which the defendant failed to appear is subject to the filing of a motion for post-trial relief which may include a request for a new trial on the ground of a satisfactory excuse for the defendant's failure to appear." *Id.* at Note. A "satisfactory excuse" must be an excuse that would constitute a valid ground for a continuance. *Jamison v.*

*Johnson,* 762 A.2d 1094, 1097 (Pa.Super.2000), *appeal denied,* 566 Pa. 644, 781 A.2d 145 (2001) (citing Goodrich Amram 2d § 218:3). Examples of such valid grounds include "agreement of counsel; illness of counsel, a party, or a material witness; inability to maintain the testimony of an absent witness by means of discovery; or such other grounds as may be allowed by the court." *Id.*

¶ 9 In the present case, the content of the written hearing notice attached to Breza's complaint was prescribed by Allegheny County Local Rule of Civil Procedure 1303, pursuant to Pa.R.C.P. 1303(a)(2). Accordingly, the matter was properly transferred to a trial judge where a non-jury verdict was rendered in favor of Breza. In Don Farr's subsequent filing, which was properly treated as a post-trial motion, it alleged it never received notice of the arbitration date.

¶ 10 The trial court determined that Don Farr failed to provide a satisfactory excuse for its non-appearance. In making this determination, the trial court applied the mailbox rule. This rule provides that proof of a mailing raises a rebuttable presumption that the mailed item was received. *Samaras v. Hartwick,* 698 A.2d 71, 73 (Pa.Super.1997). Furthermore, the presumption under the mailbox rule is not nullified solely by testimony denying receipt of the item mailed. *Id.;* see also *Donegal Mutual Insurance Company v. Insurance Department,* 719 A.2d 825 (Pa.Cmwlth.1998) (finding that merely asserting that the letter was not received, without corroboration, is insufficient to overcome the presumption of receipt).

¶ 11 In applying the mailbox rule, the trial court found that the docket entries established that the complaint containing notice of the arbitration date was mailed on November 27, 2000. Because there were no docket entries indicating the complaint had been returned, the trial court determined Breza established a rebuttable presumption that Don Farr received the mailing. In denying post-trial motions, the trial court found that Don Farr's assertion of non-receipt was insufficient to overcome the presumption. Trial Court Opinion, 7/21/01 at 3.

¶ 12 Based upon our review, we agree with the trial court's determination. Appellant had every opportunity to present a satisfactory excuse for its failure to appear at trial. All claims related to notice or lack thereof should have been raised in Don Farr's post-trial motions. Pa.R.C.P. 1303, Note, 1998 Explanatory Comment; Pa.R.C.P. 218, Note. In its motion, Don Farr merely claimed it never received notice of the arbitration date and alleged it had a legitimate defense to the underlying claims set forth in the complaint. However, Don Farr's mere assertion that notice was not received, without corroboration, is insufficient to overcome the presumption. *Samaras; Donegal Mutual, supra.* Therefore, we agree with the trial court that Don Farr failed to provide a satisfactory excuse for its failure to appear.

¶ 13 We recognize the dissent relies on *Commonwealth v. Thomas,* 814 A.2d 754 (Pa.Super.2002), for the proposition that in order for a party to benefit from the mailbox rule's presumption, the party must carry its burden of proving the notice has been mailed. *See* Dissenting Opinion at 1139–42. We find *Thomas* is distinguishable from the present case. In *Thomas,* appellant failed to appear for her summary appeal on cruelty to animals charges. After learning her case was dismissed for failure to appear she sought a new hearing claiming she did not receive proper notice. The trial court rejected Appellant's claim. The trial court found the Commonwealth presented convincing evidence that the no-

tice had been mailed in accordance with standard mailing procedures of the court administrator's office thereby establishing a presumption of receipt. The trial court further found appellant's mere denial of receipt was insufficient to rebut the presumption of notice being received. On appeal, a panel of this Court reversed and remanded for a trial *de novo*. The panel found that the Commonwealth failed to meet its burden that appellant received notice of the hearing. The panel determined that merely producing an un-timestamped copy of a hearing notice contained in the Clerk of Court's file and offering generic testimony as to the standard mailing practices for summary appeal hearing notices in the county was insufficient.

¶ 14 Unlike *Thomas*, the instant case involves whether Don Farr received the notice of appeal and complaint, which listed the arbitration hearing date and included notice that if one or both parties failed to appear, the matter would be heard before a judge on the same date and time. Allegheny County Local Rule 1005C provides that the Prothonotary shall mail by first class mail a copy of the notice of appeal and the complaint and that any return be noted on the court's docket. Pursuant to Pa.R.C.P.D.J. 1005C, such first class mailings by the Prothonotary under Allegheny County Local Rule 1005C operates as service and proof of service as required by Pa.R.C.P.D.J. 1005A and 1005B. Here, the docket reflects that the Prothonotary served Don Farr the notice of appeal and a copy of the complaint by mail on November 27, 2000. There was no entry made on the docket that the notice or the complaint was returned. We find the entry on the docket was sufficient to establish these items had been mailed. As such, the proof of mailing raised the rebuttable presumption that the mailed item was received. Again, Don Farr's mere denial of receipt was not sufficient to overcome the presumption. Accordingly, we find *Thomas* is not controlling here.

¶ 15 Judgment affirmed.

¶ 16 TAMILIA, J. joins.

¶ 17 BENDER, J. files a Dissenting Opinion.

## DISSENTING OPINION BY BENDER, J.:

¶ 1 On February 5, 2003, the Pittsburgh Post Gazette reported that the trial division of the Allegheny County Court of Common Pleas had unexpectedly ground to a halt due to an absence of jurors. The problem, it seems, was that, inexplicably, approximately 355 juror summonses had failed to reach the intended recipients. Allegheny County Court Administrator Raymond Billotte was perplexed, the Post–Gazette quoted him thusly: "The summonses did not reach the mail and were not mailed out. We went back and reviewed the process and quite honestly are unable to pinpoint exactly why they were not sent out." The prospective jurors are quite fortunate they were not litigants. For if they were, they might be facing a fate similar to that currently being experienced by our Appellant here.

¶ 2 The present action arose out of a civil dispute, first litigated in District Justice Court, between Michael Breza (Appellee) and Appellant, a moving company. Appellee alleged that he sustained property damage at the hands of Appellant while his belongings were being transported from Greater Pittsburgh to Greater Los Angeles, California. A hearing was held before District Justice William J. Ivill on November 20, 2000, after which a judgment was entered in favor of Appellant.

¶ 3 On November 22, 2000, Appellee effectuated an appeal from the judgment of

the district justice by filing a notice of appeal and complaint with the Prothonotary of the Court of Common Pleas of Allegheny County. According to docket entries, on November 27, 2000, the complaint was mailed to Appellant with a cover sheet bearing an arbitration hearing date of June 11, 2001.[2] The cover sheet also included notice that if one or both parties failed to appear, the matter would be immediately heard before a judge on the same date.

¶ 4 When Appellant failed to appear at the June 11, 2001 arbitration hearing, the case was immediately sent to the Court of Common Pleas of Allegheny County for an *ex parte* non-jury trial pursuant to Pa. R.C.P. 1303(b)(2). After hearing the testimony of Appellee, a non-jury verdict was entered against Appellant in the amount of $7,799.00.

¶ 5 On June 18, 2001, after receiving notice of the entry of a non-jury verdict against Appellant, Appellant filed a "motion for reconsideration" of the court's order asserting that it never received notice of the appeal to arbitration division or notice of the arbitration hearing. The court, ignoring the title on the document, treated the motion as a motion for post-trial relief but denied said motion on July 21, 2001, without conducting a hearing or factfinding proceeding of any kind. Judgment on the verdict was entered on August 2, 2001. On August 14, 2001, Appellant filed this appeal, raising one issue for our review:

> Did the Court of Common Pleas err in determining that notice of an arbitration hearing was properly sent to Appellant, thus justifying, in Appellant's absence from said hearing because of his failure to receive any notice, awarding judg-

ment to Appellee and denying Appellant any right to appeal with a trial *de novo?*

¶ 6 As the above factual summary attests, in the present case, a verdict in the sum of $7,799 was entered against Appellant after it failed to appear at a scheduled arbitration proceeding. Appellant's failure to appear is notable in that Appellant had prevailed in the earlier held proceeding before a local district justice. Thus, one would think, Appellant possessed ample reason to appear and defend itself in "round two" of the litigation. Appellant offered a simple enough excuse for its failure to appear at the scheduled arbitration proceeding—Appellant claims that it never received notice that Appellee had appealed the District Magistrate's decision or the complaint filed in conjunction with that appeal, which bore the scheduled date of the attendant hearing. If true, this means that Appellant never had notice of the scheduled hearing date. Of course, notice remains one of the most fundamental of all aspects of due process.

¶ 7 Despite Appellant's offer of this rather simplistic but perhaps most legitimate of all possible excuses for missing the scheduled hearing, no relief was forthcoming. Appellant's excuse fell upon deaf ears since, in the estimation of the trial court, and now the Majority, Appellant's effort to explain its failure to appear at the scheduled arbitration proceeding was rightfully precluded by operation of the "mailbox rule." That rule essentially provides: "proof of a mailing raises a rebuttable presumption that the mailed item was received and it is well-established that the presumption under the mailbox rule is not nullified solely by testimony denying receipt of the item mailed." *Department of*

---

**2.** The cover sheet on the complaint included in the certified record contains a stamped date of February 27, 2001, which is "whited

out." A handwritten date of June 11, 2001 is written over the "whited out" date.

*Transportation v. Grasse,* 146 Pa.Cmwlth. 17, 606 A.2d 544, 545 (1991). Ignoring the fact that no factfinding proceeding has yet been conducted, the Majority and the trial court conclude that the only proof of non-receipt offered by Appellant to "rebut" the presumption of receipt is a "bare denial" of receipt. I disagree with this conclusion. I also believe that the trial court's decision was premature and that the mailbox rule has been misapplied in this case. Thus, I dissent.

¶ 8 In order to understand the myriad of errors that have occurred here, it is necessary to understand what the "mailbox rule" is. The mailbox rule is a rule of presumption, a judicial construct, that, at least theoretically, assists the determination of an underlying factual query: that being whether an item of importance to the litigation was actually received by one of the parties. Thus, the determination of whether the rule applies is merely a step along the way to determining the ultimate inquiry, whether the item was received. It is not itself an ultimate inquiry.

¶ 9 With the above as prelude, the first error committed in the present case was that the court asserted the mailbox rule as opposed to the party benefiting from the rule, Appellee. Appellant sought relief from the entry of a non-jury verdict by filing a "motion for reconsideration" in which it averred that it never received notice of the hearing. Appellee never responded. Since notice is a fundamental value underlying due process, taken at face value, Appellant's assertion unequivocally entitled it to relief. Of course, the mere fact that a party avers something, does not make it true. Thus, had there been a hearing on the motion Appellee would have been entitled to contest Appellant's averments and, in so doing, assert the mailbox rule and receive the benefit of the presumption. However, in my opinion, by denying Appellant's post-trial motion through assertion of a rule of presumption, the court injected itself into the litigation and advocated a legal theory or rule on Appellee's behalf. In so doing, I would contend, the court abandoned its role as arbiter and became an advocate.

¶ 10 The second error committed in the present case was that the court "applied" the mailbox rule without conducting any form of evidentiary hearing or factfinding proceeding. As such, not only was there a lack of evidence that the notice had been mailed, but, additionally, Appellant was never provided an opportunity to offer evidence to rebut the supposedly rebuttable presumption. Does it not stand to reason that if the rule operates to presume a fact only, that the party on the wrong end of the presumption be provided an opportunity to rebut it? One would think so. Yet, apparently the Majority and trial court think otherwise.

¶ 11 Very recently, in *Commonwealth v. Thomas,* 814 A.2d 754 (Pa.Super.2002), this Court granted a new trial to an Appellant that had been found guilty of a summary offense (cruelty to animals) when she failed to appear at the scheduled hearing before a district justice. In *Thomas,* like here, an appellant's efforts to receive a new hearing/trial upon an assertion of a lack of notice were denied due to application of the mailbox rule. We concluded that the court had erred in applying the mailbox rule under the facts presented there. In perhaps one of the more exhaustive discussions of the proper application of the rule, the panel made two points of considerable relevance to the present case. First, while emphasizing the point that the rule establishes a presumption only, the panel indicated that the party seeking to apply the presumption of receipt emanating from the mailbox rule "had the **burden of proof** to show that the

notice was in fact mailed." *Id.* at 760 (emphasis added). Second, the panel stated "there must be some **direct evidence** either that an item was prepared and deposited in the mail, or prepared and placed in the usual place of mailing...." *Id.* at 761 (emphasis added).

¶ 12 Based upon the above excerpts, it is difficult to understand how we can affirm the denial of Appellant's motion without a hearing. Do not the terms "burden of proof" and "direct evidence" suggest the need for a factfinding proceeding? While the mailbox rule may well be applicable in this case, there was a dearth of evidence to support its application when Appellant's motion was denied. More importantly, as indicated above, the conclusion that the rule is applicable is not the end inquiry. If applicable, the rule only results in presumption of receipt. The ultimate fact in question, that being receipt of the item supposedly mailed, is, theoretically, still open to determination. In this respect, even if the mailbox rule is applicable, Appellant must be provided an opportunity to rebut the presumption of actual receipt.

¶ 13 As for the application of the rule on the record before the court, again I feel the court erred. As *Thomas* demonstrates, before a party may benefit from the mailbox rule's presumption, the party must carry its burden of proving, through **direct evidence**, that the item in question was in fact mailed. Indeed, in *Thomas,* despite rather convincing circumstantial evidence that the notice had been mailed, we voiced skepticism and found the evidence lacking. We stated:

> In the case at bar, the evidence adduced at the evidentiary hearing on Appellant's motion did not establish that the hearing notice setting the date for Appellant's trial had actually in fact been mailed, nor did it establish that this notice had been prepared in the ordinary course of business and placed in the regular place of mailing. As recounted above, at the hearing of January 3, 2002, an employee of the Beaver County Court Administrator's Office testified as to the *general practice* which existed in Beaver County for the preparation and sending out of all notices of summary appeal hearings. The employee testified as to how she prepares all hearing notices, by entering the case number assigned to the case by the Clerk of Courts into her computer which then automatically generates the hearing notice. She further testified that after she prepares such notices, she then has them delivered to the mailroom via tipstaff. She indicated in her testimony that she did not know if the notice of appeal hearing contained in the Clerk of Courts file was the actual notice sent in the case, but she opined that it was "consistent" with the type of notice that would ordinarily be generated.

*Id.* at 759.

¶ 14 As the above excerpt demonstrates, in *Thomas* a notice was contained in the Clerk of Courts file. According to the testimony of the employee from the Clerk of Courts office, such notices are generated by computer after the case number is entered into the computer. The notices are then taken to the mailroom by tipstaff for mailing. The presence of the notice in the file would seem to conclusively establish that a notice had been generated. It is only one step removed, then, to conclude that, under normal procedure, the notice was in fact mailed. Moreover, the fact that Ms. Thomas' assigned public defender received a copy of the notice through interoffice mail provided further proof that notice had been processed "in the usual fashion." Nevertheless, despite this evidence that the notice had been processed in the normal fashion, i.e., mailed, we found this evidence insufficient to trigger the pre-

sumption of the mailbox rule. Our discussion of the matter is telling:

> Critically, however, the employee of the Court Administrator's Office admitted that she did not have any personal recollection of preparing a notice of Appellant's summary appeal hearing on October 31, 2001, or delivering such a notice to a tipstaff to place in the regular place of mailing on that day. Moreover, and most importantly, the employee acknowledged that there was no official record kept of any of the notices which had been prepared on October 31, 2001, nor was any record kept of the notices which had been prepared and given to the tipstaff for delivery to the mailroom on that day.

> It was stipulated by the parties that all mail from the court administrator's office was brought to the mailroom by tipstaffs where it was metered and left for the postal service to pick up. An employee of the Beaver County mailroom testified generally as to what happened in the event that a letter was returned by the postal service, namely that she would return it to the courthouse office from which it originated. She admitted that she had no recollection as to whether a letter addressed to Appellant had ever been returned to the courthouse. She also acknowledged that she did not keep track of the flow of mail from various offices to the mailroom. Additionally, there were no county mailing records introduced at the hearing to show that this specific notice had been mailed to Appellant, nor were any other suitable records produced to show the mailing of the notice such as a certificate of mailing from the post office.

> In sum, then, there was no testimony adduced at the evidentiary hearing held in this matter from any individual who had a **personal recollection of mailing** **Appellant's notice** of her appeal hearing or who had a personal recollection of preparing the notice and placing it in the regular place of mailing. Neither was there produced at the evidentiary hearing any official county or postal records, that were kept in the ordinary course of business, which showed that this notice was in fact mailed to Appellant, or that this notice had been prepared and taken to the regular place of mailing. Under these circumstances we must agree with Appellant that the Commonwealth did not meet the evidentiary threshold for the application of the mailbox rule.

*Id.* at 759–60 (emphasis added) (citations to the record omitted).

¶ 15 *Thomas,* it seems, requires far greater proof of mailing than evidence suggesting the item had been mailed. Of course, that brings us to the evidence of mailing found here. In the present case, the only "evidence" that the notice was actually mailed is a notation on the docket stating so. While the trial court, and apparently the Majority, was willing to treat this notation as "iron-clad" proof of the proposition it asserts, we should be more circumspect. The notation is not a postal receipt that is given only after an item has been placed with the United States Postal Service with the proper postage. It is not a video tape showing the correctly addressed notice being dropped in a mailbox with the appropriate postage affixed. It is not an affidavit of an individual claiming to have personal recollection that the item in question was placed in the mail, duly posted. It is not even the "computer generated county mailing records"—a seemingly self-descriptive term that is maybe, in reality, less descriptive than it sounds—which was found acceptable by a panel of this court in *Samaras v. Hartwick,* 698 A.2d 71 (Pa.Super.1997). Indeed, technically, the notation is hearsay, and although perhaps

admissible evidence under an applicable exception,[3] the fact that it is hearsay should not be overlooked. Hearsay, by definition, is not **direct evidence**. Thus, standing alone, the notations appearing on the docket prove nothing other than that the notation was made on the docket.

¶ 16 "Ignorance is bliss," so the adage goes. Another saying of equal wisdom provides that, oftentimes, "less is more." Here, with respect to the notation in question, both of these ideas combine to provide a sense of certainty and probative value than might be completely undue. Presumably, the notation on the docket evidences that the notice was actually mailed. However, the notation does not conclusively prove that the notice was mailed anymore than did the presence of the notice in the Clerk of Courts file in *Thomas*. Moreover, and unlike *Thomas*, since in the present case there has been no explanation of the process whereby notices are mailed and notations are put on the docket it has become easier to accept the notation at face value. Thus, the court's premature disposition creates an air of legitimacy to its actions by creating the impression that proof of mailing is a given fact. However, this is backwards factfinding. Only after we delve into the process for placing notations on the docket can we determine whether the notation should be accepted as undisputed fact.

¶ 17 Query: does the person who actually prepares the notice and runs the envelope through the postage machine then subsequently enter the notation on the docket? Is the fact of mailing verified prior to the notation being put on the docket? Or is one person in charge of preparing the notice, another the delivering of the notice to the mailroom staff and a third, entering a notation on the docket? Indeed, does the docket notation even await the actual mailing of the notice, or is it made after the notice is generated upon the presumption that it will be mailed in due course? Since there was no evidence received as to the normal process utilized, we are merely guessing as to these important questions. Or, perhaps more accurately stated, I am guessing as to these matters. The trial court apparently did not ponder these matters, nor has the Majority here. Indeed, they are not even entertaining these questions. They simply accept the docket entry as proof absolute, even though in actuality that notation may prove nothing more than did the presence of a notice in the file in *Thomas*. Without some testimony to clarify the procedure whereby notices are generated and mailed and recorded on the docket in Allegheny County, the notation does not prove that the notice was actually placed in the hands of the postal service. Indeed, had the person who generated the notice in *Thomas* then placed an entry on the docket that the notice had been mailed, would there have existed any greater "proof" that the notice had actually been placed in the mail?

¶ 18 Additionally, on the matter of the evidence, I disagree that Appellant's evidence of non-receipt is limited to a bare denial of receipt. Reaching this conclusion is predicated upon a narrow view of the "evidence" and failing to allow Appellant the reasonable inferences from all the facts of record. To the extent the matter has essentially been decided against Appellant on the pleadings, Appellant should at least be entitled to having the "evidence" construed in his favor. Thus, even if Appellant were afforded an opportunity to pres-

---

**3.** *Goldsberry v. U.S.*, 598 A.2d 376 (D.C.App. 1991), provides one of the most extensive analyses of the admissibility of docket nota-tions and indicates that, while hearsay, such entries are admissible under the official records exception to the hearsay rule.

ent evidence yet rested upon the testimony of one or more of its principals that notice was never received, it would not necessarily mean that the "proof" of non-receipt was "limited" to the mere denial of receipt—at least, not as contemplated in the rule the Majority relies upon. In my opinion, the fact that Appellant failed to respond to the complaint and attend the hearing **after prevailing at the District Justice level** is a circumstance that should be assessed in the context of human experience. Human experience indicates that parties who prevail at the district justice level and who receive notice of appeal, do not commonly fail to defend the judgment upon appeal to the court of common pleas. Far more common is the circumstance where a party who has lost at the district justice level fails to appear for an arbitration proceeding due to a belief that defending the action is fruitless and will simply lead to another defeat.

¶ 19 Similarly, Appellant responded to notice of entry of a non-jury verdict with considerable promptness. Application of the presumption in the present case leads to the conclusion that Appellant received notice but either overlooked the hearing date or simply chose not to attend the hearing. However, if Appellant cared enough to defend at the District Justice level, why would Appellant not similarly defend upon appeal to arbitration, particularly after prevailing below? Moreover, if Appellant cared so little about the proceeding that it failed to defend after notice was received, why would Appellant takes steps to seek relief less than a week after receiving notice of the verdict? In my opinion, these circumstances represent additional evidence of non-receipt and, thus, in combination with Appellant's denial of

receipt, would support a finding that notice was not received despite the application of the "mailbox rule." [4] In this regard, the circumstances surrounding the failure to respond to the allegedly received notice in the present case contrasts with the type of cases where the denial of receipt can be characterized as completely self-serving, as in denial of receipt of a license suspension, *Grasse*, or the failure to promptly respond to a termination of action notice. *Samaras*.

¶ 20 Although I believe the errors pointed out above entitle Appellant to a least an evidentiary hearing, I believe some criticism of the mailbox rule, at least as currently applied, is indicated by the result in this case. As has been amply demonstrated in both this Dissenting Opinion and the Majority's Memorandum Opinion, the mailbox rule has been represented to be a rule of presumption, ostensibly rebuttable, that a letter duly posted is a letter actually received. As quoted above, a representative recitation of the rule states "proof of a mailing raises a rebuttable presumption that the mailed item was received ...." *Grasse*, 606 A.2d at 545. I have no difficulty with this proposition. However, the attendant proviso, which dictates that "the presumption under the mailbox rule is not nullified solely by testimony denying receipt of the item mailed," *id.*, gives me great pause. The first difficulty I have with the current application of the mailbox rule is that, regrettably, when traced back to its origin, the above principle is not as well founded as represented.

¶ 21 The mailbox rule as set forth in *Grasse* was quoted with approval by this court in *Samaras* and, as such, both this Court and the Commonwealth Court now appear bound to its application. More-

---

**4.** I offer the above merely to point out that there is more evidence of non-receipt than a simple denial. I do not mean to usurp the trial court's function or to suggest to the trial court how the ultimate issue should be resolved.

over, the rule was reaffirmed, or applied in similar fashion, by the Commonwealth Court in the more recent *Donegal Mutual Insurance Co. v. Insurance Dept.*, 719 A.2d 825 (Pa.Cmwlth.1998). In fact, *Donegal Mutual* cites *Samaras* for the proposition and *Samaras* cites *Grasse* for its support. Thus, recent decisions applying the mailbox rule stamp *Grasse* as important precedent on this matter. In making the assertion that the presumption of receipt cannot be rebutted by a denial alone, the *Grasse* panel cites to *Department of Transportation v. Brayman Construction Corp.-Bracken Construction Co.*, 99 Pa. Cmwlth. 373, 513 A.2d 562 (1986), another Commonwealth Court decision, for its support. In turn, the *Brayman* panel cites *Berkowitz v. Mayflower Securities, Inc.*, 455 Pa. 531, 317 A.2d 584 (1974), and *Meierdierck v. Miller*, 394 Pa. 484, 147 A.2d 406 (1959), two Pennsylvania Supreme Court decisions, for its authority. The *Berkowitz* opinion also cites to *Meierdierck*, which, thus, appears to be the case which germinated the rule as it is currently conceived.

¶ 22 *Meierdierck*, at first glance, seemingly supports the proposition as currently cited. However, upon a closer look, the rule is not as well founded as commonly asserted. There the Court poses the following rhetorical question while contemplating the prospect of overcoming the presumption of receipt of a duly mailed letter:

> While the general rule is that depositing a properly addressed prepaid letter in the post office raises the presumption that it reaches the destination by due course of the mail, and mailing a letter in such a way is prima facie evidence that it was received by the persons to whom it was addressed, *Cameron Estate*, 388 Pa. 25, 35, 130 A.2d 173 (1957), does the denial of the receipt of the letter by the addressee (here the insur-

ance company-garnishee) nullify the presumption and leave the question of the receipt of the notice open to the jury's determination? We think not.

*Meierdierck*, 147 A.2d at 408. This quotation seemingly holds that denial alone cannot refute the presumption of receipt that arises from proof of mailing thereby taking the issue from the factfinder. However, when the case is scrutinized, it is revealed that the above discussion is technically dictum. The Court's analysis continued:

> Where the use of the mails **as a means of acceptance** is authorized or implied from the surrounding circumstances, the acceptance is **complete by posting the letter** in normal mail channels, without more. Restatement, Contracts § 66; I Williston, Contracts § 83 (3d ed.1957). *See also Cosgrove v. Woodward*, 49 Pa. Superior Ct. 228 (1912). **There is no requirement of receipt** unless expressly provided for. Therefore, when the court charged that the jury must find both posting and receipt error was made. Clearly, the assured was not required to convince the jury by a fair preponderance of the evidence that receipt had been accomplished.

*Meierdierck*, 147 A.2d at 408 (emphasis added).

¶ 23 *Meierdierck* involved a question of whether timely notice of an accident had been provided to an insured's insurer. As the Court's opinion makes clear, notice was deemed provided when mailed, regardless of whether the company actually received the letter. Indeed, according to the Court, it was error to inject a question of whether there had been receipt of the notice. Thus, the entire question of whether the acceptance letter had actually been received was immaterial. As such, the question of whether the presumption of receipt could be overturned by denial alone was

never at issue and the statement registers as mere dictum. In my opinion, a rule of law with the potential implications that the one under consideration has, should not result from obiter dictum.

¶ 24 Aside from the fact that the current application of the mailbox rule has its genesis in dictum, I believe the rule needs to be reexamined due to the harsh consequences it can produce as well as the fact that it is founded, at least in part, upon a logical inconsistency. While the discussion in *Meierdierck* is technically dictum, it does provide valuable insight into the genesis of the rule that denial by the addressee cannot refute the presumption of receipt. The Court states, "[t]he overwhelming weight of statistics clearly indicates that letters properly mailed and deposited in the post office are received by the addressees. Usually, the one who mails a letter is devoid of any ability to prove receipt of the letter by the addressee." *Id.* at 408. Thus, in reaching the above conclusion, the Court seemingly focused on the practicality of the situation, that most letters are received when properly mailed and the fact that proof of receipt is difficult for the sender absent the presumption. Given these two factors, a shifting of the evidentiary burden seems acceptable, if not even desirable.

¶ 25 However, this position seemingly overlooks an opposing logical reality, that it is very difficult to prove a negative proposition, i.e., non-receipt of a letter, and the equally pressing fact that in most cases the only available evidence of non-receipt will be a denial of receipt by the addressee. Indeed, beyond denial of receipt, how does the addressee disprove receipt of the item mailed? Can the addressee subpoena the letter carrier and ask him or her whether he remembers delivering the letter in question? Of course, not. A letter carrier cannot be expected to remember whether a specific letter was actually delivered to an addressee anymore than the courthouse mailroom staff can be expected to recall whether a specific notice was placed in the mail. Unlike many contemporary parcel delivery services that track every item, items delivered by "regular mail" are not tracked. Thus, there is no record of posting or delivery of regular mail.[5]

¶ 26 Given this circumstance, the presumption, if it cannot be rebutted through credible denial, is not really a **rebuttable** presumption at all, but rather, for all practical purposes and in virtually all but a few circumstances, an "irrebuttable presumption." A rebuttable presumption may be a very valuable judicial construct by presumptively establishing a proposition or fact that has a very strong basis in statistical history. In this respect, the presumption will very often reduce the work necessary to prove a proposition that is often correct in any event. However, an irrebuttable presumption is a whole different matter because it operates to conclusively establish a key fact by matter of presumption or statistical evidence without concern for the actual truth of the proposition in the case being heard. While common experience teaches that the overwhelming number of letters duly posted are actually received by the addressees, it is just as clear that not all letters are actually delivered or received.[6]

---

**5.** However, it need not be that way. Given that there is mail delivery confirmation available that does not require the signature of a recipient, is there any reason to rely upon the "mailbox rule," as currently applied, to conclusively establish something as important as notice of a court proceeding?

**6.** The fact that post offices maintain lost or "dead letter" bins and anecdotal stories of finding whole bags of undelivered mail depos-

¶ 27 While the need for the presumption might be conceded, rendering it nearly irrebuttable seems patently unfair and also unnecessary. First, the current application of the presumption essentially denies the trial court or jury its role as factfinder for reasons that have never been satisfactorily expressed. Consider the *Samaras* case. There, a panel of this Court quoted the above language from *Grasse*, to nullify a specific finding of fact by the trial court that notice, although apparently mailed, was never received. In that case, the trial court had heard the relevant testimony and found the denial of receipt credible. The court weighted the denial accordingly and granted relief. Yet, in reliance upon the above principle, the trial court's finding was rejected on appeal. The panel concluded that the trial court was not allowed to make a finding as to this issue when the "only" evidence presented was a denial by the addressee. The question I must ask in light of this conclusion is, why? Juries and trial courts are delegated the obligation to assess credibility and make findings of fact every day. There is nothing more inherently difficult in this assessment of credibility than those routinely entrusted to the factfinder. Why is the circumstance different when it comes to receipt of notice?

¶ 28 Second, irrebuttable presumptions raise due process concerns, particularly when they serve to prevent proof of such a fundamental constitutional right as notice. As such irrebuttable presumptions are disfavored in law and, occasionally, are deemed unconstitutional. *See generally Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). Here, the effectively irrebuttable presumption relates to notice, which is one of the most essential principles of due process.

¶ 29 In my opinion, the present case presents a second inequity, grounded in the procedural history, which goes beyond the application of the mailbox rule. Since Appellant did not file an answer to the complaint, Appellee was provided with a procedural opportunity to take steps to secure a default judgment against Appellant. This is the common response to a failure to answer a complaint. However here, this step was not pursued.[7] Had steps been taken to secure a default judgment, two significant circumstances would have occurred. First, it would have been necessary for a notice of intention to take default judgment to be served upon Appellant. Pa.R.C.P. 237.1. This would have provided an additional opportunity for notice that the matter was still open to reach Appellant, thereby allowing Appellant an opportunity to defend the action in due

ited in trash dumpsters indicate that certainly not all letters deposited in the mail are received. *See*, www.postal-watch.org/news_2000.htm. Indeed, an internet search indicates a reference to the fact that over 57 million letters end up in the "dead letter" box each year. Additionally, the following information was retrieved from a United States Postal Service website relating to undeliverable mail in 2000:

Undeliverable-as-addressed mail totaled 5.4 billion pieces in 2000.
Additional average cost to handle per piece: 29 cents
2.1 billion pieces (39%) were forwarded

1.3 billion pieces (24%) were returned to sender
2 billion pieces (37%) were treated as waste or recycled.
http://www.usps.com/history/anrpt00/41.htm. Lastly, the United States Postal Service reports theft of mail is also a problem the postal service faces. See www.postalwach.org.

7. Appellee proceeded *pro se* and apparently was residing in the state of California at the relevant time. Thus, the reason a default judgment was not sought may be explained by an unfamiliarity with the rules of civil procedure.

course. However, perhaps more importantly, (and also somewhat ironically), a prompt response to the taking of a default judgment would have entitled Appellant to have the judgment opened as a matter of rule, without any requirement that the default be explained to the court's satisfaction. The applicable provision, Pa.R.C.P. 237.3(b), provides that if a petition to open a default judgment is filed within ten days after entry of judgment on the docket, the court **shall open** the judgment if a meritorious defense is provided.[8] In this case, Appellant promptly responded to the notice of entry of the non-jury verdict. Appellant's "motion for reconsideration" was filed one week after entry of the verdict. Thus, a similarly prompt response to the taking of a default judgment would have resulted in the opening of the judgment, regardless of the reason for the default. Assuming for the moment that Appellant has truthfully asserted a failure to receive notice, I fail to see why it has zero recourse due simply to the litigant's choice to proceed to an arbitration hearing rather than attempting to secure a default judgment. Indeed, the judgment obtained here is the functional equivalent to a default judgement. Is there any reason litigants in essentially the same procedural posture should enjoy considerably different rights of recourse to excuse their failure to defend the suit against them? I think not.

¶ 30 Since I believe that Appellant offered sufficient evidence to rebut the presumption created by the mailbox rule, or, in the least, has been denied a true opportunity to rebut that presumption, I believe the order under appeal must be reversed. However, for the reasons set forth above, I also believe the law of this Commonwealth would be advanced by a reassessment of the mailbox rule as it has been applied in the present case; particularly with respect to such important mailings as court notices that implicate fundamental due process. Thus, I dissent.

---

**8.** Without expressing any opinion on the ultimate merit of Appellant's defense, we note that Appellant would seem to possess a defense that would entitle it to have the judg-

ment opened. Not only did Appellant prevail in the District Justice proceeding, but Appellant raises an issue of privity with Appellee.